THE STATE OF OHIO, APPELLEE, *v.* POST, APPELLANT.

[Cite as State *v.* Post (1987), 32 Ohio St. 3d 380.]

(No. 86-425—Decided September 16, 1987.)

382

*Gregory A. White,* prosecuting attorney, and *Mark E. Stephenson,* for appellee.

*Randall M. Dana,* public defender, *David C. Stebbins, G. Benjamin Wills* and *Randall Porter,* for appellant.

HERBERT R. BROWN, J. In accordance with R.C. 2929.05(A), we are required to undertake a three-part review. First, we must review the judgment and consider the issues as we are required to do in all criminal cases. Second, we must independently weigh the evidence disclosed in the record and determine whether the aggravating circumstance the appellant was found guilty of committing outweighs the mitigating factors beyond a reasonable doubt. Finally, we must decide whether the sentence of death is appropriate after considering whether the sentence is excessive or disproportionate to the penalty imposed in similar cases. For the reasons set forth below, we affirm the judgment of conviction and uphold the sentence of death.

I

A

Appellant asserts, by supplemental brief, that the three-judge panel committed prejudicial error in considering victim impact evidence in its sentencing decision. Appellant makes two claims: (1) the Ohio Revised Code does not authorize the introduction of victim impact evidence in a capital case, and (2) such evidence is inflammatory and prejudicial, and therefore denies a fair sentencing determination as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution. We address these issues in light of the United States Supreme Court's recent decision in *Booth* v. *Maryland* (1987), 482 U.S. ___, 96 L. Ed. 2d 440.

In *Booth,* the court invalidated a provision in a Maryland statute which required consideration of a victim impact statement during sentencing proceedings,[1] holding that the introduction of such evidence during the sentencing phase of a capital murder trial violates the Eighth Amendment to the United States Constitution. *Id.* at ___, 96 L. Ed. 2d at 452.

The defendant in *Booth* had been found guilty of the robbery and murder of an elderly couple. Prior to capital sentencing, the prosecutor read a victim impact statement to the jury which described the personal characteristics of the victims, the emotional impact of the crimes on their family, and recited the family's opinions and characterizations of both the crimes and the defendant.

The court determined that the information supplied in a victim impact statement "* * * is irrelevant to a capital sentencing decision, and that its admission creates a constitutionally unacceptable risk that the jury may impose the death penalty in an arbitrary and capricious manner." *Id.* at ___, 96 L. Ed. 2d at 448. The court reasoned that victim impact statements focus on the character and reputation of the victim and the effect of the crime on family members, which factors may not be

---

[1] Md. Ann. Code, Article 41, Section 4-609(d) (1986) provides in part:

"In any case in which the death penalty is requested * * *, a presentence investigation, including a victim impact statement, shall be completed by the Division of Parole and Probation, and shall be considered by the court or jury before whom the separate sentencing proceeding is conducted * * *."

related to the culpability of the defendant or the decision to kill. The court further stated that "[t]his evidence thus could divert the jury's attention from the defendant's background and record, and the circumstances of the crime." *Id.* at ___, 96 L. Ed. 2d at 450. Finally, the court noted that the formal presentation of the grief and anger experienced by the family served to inflame the jury, and concluded that "[t]he admission of these emotionally-charged opinions as to what conclusions the jury should draw from the evidence clearly is inconsistent with the reasoned decision-making we require in capital cases." (Footnote omitted.) *Id.* at ___, 96 L. Ed. 2d at 452.

In the case *sub judice,* the pre-sentence investigation report, submitted to the three-judge panel, contained a victim impact statement which summarized the effect of Helen Vantz's murder on her family, the impact of her loss on their daily lives, as well as the family's belief that the defendant should receive the death penalty. In addition, one of Vantz's sons was permitted to address the panel during the mitigation hearing.

Before applying the principles enunciated in *Booth, supra,* to the facts at bar, we will examine the admissibility of victim impact evidence in capital sentencing hearings under Ohio law. Unlike the Maryland statute involved in *Booth,* R.C. 2929.03(D)(1) does not expressly authorize the inclusion of victim impact evidence in pre-sentence investigation reports.

We further note that R.C. 2947.051(A), 2929.12 and 2929.14, which collectively sanction the preparation and consideration of victim impact statements during sentencing determinations, provide that a victim impact statement may be considered only in determining the minimum term of an indefinite sentence for a felony or when imposing a fine for a felony.[2]

Finally, R.C. 2943.041, which gives the victim or family representative the right to be present at the plea stage and to make a statement with regard to sentencing, is inapplicable to cases wherein the defendant has been charged with a capital offense. R.C. 2943.041(A).

Based on the foregoing, we find error in the admission of the victim im-

---

[2] R.C. 2947.051(A) provides:

"(A) In all criminal cases in which a person is convicted of * * * or pleads no contest to and is found guilty of a felony, the court shall, prior to sentencing the offender, order the preparation of a victim impact statement by the department of probation of the county in which the victim of the offense resides, by the court's own regular probation officer, or by a victim assistance program that is operated by the state, any county or municipal corporation, or any other governmental entity if the offender caused, attempted to cause, threatened to cause, or created the risk of physical harm to the victim of the offense. *The court shall, in accordance with sections 2929.12 and 2929.14 of the Revised Code, consider the victim impact statement in*

*determining the sentence to be imposed upon the offender."* (Emphasis added.)

R.C. 2929.12(A) provides:

"(A) In determining the minimum term of imprisonment to be imposed for a felony for which an indefinite term of imprisonment is imposed, the court shall consider * * * the victim impact statement prepared pursuant to section 2947.051 of the Revised Code, if a victim impact statement is required by that section * * *."

R.C. 2929.14(A) provides:

"(A) In determining whether to impose a fine for a felony and the amount and method of payment of a fine, the court shall consider * * * the victim impact statement prepared pursuant to section 2947.051 of the Revised Code * * *."

pact evidence. However, we are not persuaded that such error warrants reversal. The risks of arbitrary and prejudicial sentencing which guided the court in *Booth* are not present in the case *sub judice* because this case was before a three-judge panel rather than a jury.

We addressed the admissibility of victim evidence in a capital case tried to the court in *State* v. *White* (1968), 15 Ohio St. 2d 146, 44 O.O. 2d 132, 239 N.E. 2d 65, and held at paragraph two of the syllabus:

"The use by the state of evidence of the victim's background, and reliance upon such evidence in its argument for the death penalty, is improper and constitutes error, but while such error may be cause for reversal because of its prejudicial effect on a jury, it must affirmatively appear that in a bench trial the court relied on such testimony in arriving at its verdict in order for such error to be ground for reversal."

We further stated that this court indulges "* * * in the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." *Id.* at 151, 44 O.O. 2d 136, 239 N.E. 2d 70. See *United States* v. *Impson* (C.A. 5, 1977), 562 F. 2d 970, 971, certiorari denied (1978), 434 U.S. 1050; *United States, ex rel. Placek*, v. *Illinois* (C.A. 7, 1976), 546 F. 2d 1298, 1304-1305; *United States* v. *Hughes* (C.A. 5, 1976), 542 F. 2d 246, 248. See, also, *United States* v. *Busch* (C.A. 10, 1985), 758 F. 2d 1394, 1398; *United States* v. *Greathouse* (C.A. 7, 1973), 484 F. 2d 805, 807; McCormick, Evidence (3 Ed. Cleary Ed. 1984) 153, Section 60; 1 Wigmore, Evidence (Tillers Rev. 1983) 212-216, Section 4d.1. See, generally, Note, Improper Evidence in Nonjury Trials: Basis for Reversal? (1965), 79 Harv. L. Rev. 407.

In the case at bar, the three-judge panel noted in its written opinion that they *heard* the statement of Helen Vantz's son on behalf of the family. It was further noted that "* * * [i]n their deliberations, pursuant to O.R.C. 2929.04(B) *the panel considered and weighed* against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character and background of the offender, and particularly the factors stressed by defense counsel * * *." (Emphasis added.) No reference was made to use of the victim impact evidence in the weighing process.

Absent an indication that the panel was influenced by or considered the victim impact evidence in arriving at its sentencing decision, the admission of the victim impact statement as well as permitting the victim's son to address the court at the mitigation hearing did not constitute prejudicial error.

### B

In his first proposition of law, appellant asserts that the state's use of a confession written by a polygraph expert and signed by appellant (as well as the polygrapher's testimony) violated his attorney-client privilege, his right against self-incrimination, right to effective assistance of counsel, right of meaningful access to the courts, and due process.

Robert Holmok, a polygraph expert, was retained by appellant's counsel in preparation of the defense in the case. As a result of Holmok's interview, appellant signed the following statement:

"The following statement is only to be given to my attorney Ernie Hume + is not to be admitted in court against me.

"I did the robbery of the Slumber Inn + shot the clerk, Helen. /s/"

During a hearing on appellant's motion *in limine* to exclude Holmok's testimony, the state proffered the testimony of Richard Slusher who was appellant's fellow inmate at the county jail. Slusher testified that appellant admitted signing a written confession in relation to the polygraph examination and admitted that the confession was true.

The trial court ruled the written statement as well as Holmok's testimony admissible, holding that while the appellant's admissions may have been initially protected as privileged communication or work product, appellant's disclosure to Slusher waived the privilege.

The parties have not disputed the proposition that communications made by appellant to Holmok fall under purview of the attorney-client privilege. The privilege includes communications through persons acting as the attorney's agents. 8 Wigmore, Evidence (McNaughton Rev. 1961) 618-619, Section 2317. See *Foley* v. *Poschke* (1941), 137 Ohio St. 593, 19 O.O. 350, 31 N.E. 2d 845; *Bowers* v. *State* (1876), 29 Ohio St. 542. Some jurisdictions have held that statements made to polygraph experts are protected by the attorney-client privilege from disclosure. *State* v. *Rickabaugh* (S.D. 1985), 361 N.W. 2d 623; *Brown* v. *State* (Ind. 1983), 448 N.E. 2d 10; *People* v. *George* (1980), 104 Misc. 2d 630, 428 N.Y. Supp. 2d 825; *People* v. *Marcy* (1979), 91 Mich.

App. 399, 283 N.W. 2d 754; Annotation, Applicability of Attorney-Client Privilege to Communications Made in Presence of or Solely to or by Third Person (1982), 14 A.L.R. 4th 594, 641-643. We agree. Thus, we must decide whether the privilege was waived by disclosure of the communications.

Appellant contends he did not waive the privilege since he did not expressly consent to waiver and he did not voluntarily testify or authorize Holmok to testify.[3]

However, in *Travelers Indemnity Co.* v. *Cochrane* (1951), 155 Ohio St. 305, 316, 44 O.O. 302, 307, 98 N.E. 2d 840, 846, this court determined that the attorney-client privilege is destroyed by voluntary disclosure to others of the content of the statement. See *United States* v. *Jones* (C.A. 4, 1982), 696 F. 2d 1069, 1072; *In re Sealed Case* (D.C. App. 1982), 676 F. 2d 793, 808-809; *United States* v. *Aronoff* (S.D. N. Y. 1979), 466 F. Supp. 855, 862. See, also, 8 Wigmore, *supra,* at 601-603, Section 2311; McCormick, Evidence, *supra,* 227, Section 93. Waiver of the attorney-client privilege by disclosure to third parties is premised on the principle that "[t]he privilege assumes, of course, that the communications are made with the intention of confidentiality. The reason for prohibiting disclosure * * * ceases when the client does not appear to have been desirous of secrecy. 'The moment confidence ceases,' said Lord Eldon, 'privilege ceases.' This much is

---

[3] Our attention is called to R.C. 2317.02, which provides in part:

"The following persons shall not testify in certain respects:

"(A) An attorney, concerning a communication made to him by his client in that relation or his advice to his client; but the attorney may testify by express consent of the client, or if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of such deceased client; and if the client voluntarily testifies, *the attorney may be compelled to testify* on the same subject * * *." (Emphasis added.)

universally conceded." 8 Wigmore, *supra,* at 599, Section 2311. (Footnotes omitted.) Cf. *Emley* v. *Selepchak* (1945), 76 Ohio App. 257, 31 O.O. 558, 63 N.E. 2d 919.

Thus, it has been held that "[c]ommunications divulged to strangers or outsiders can scarcely be considered confidential communication between attorney and client," and are not protected by the attorney-client privilege. *United States* v. *Cochran* (C.A. 5, 1977), 546 F. 2d 27, 29; *United States* v. *Gordon-Nikkar* (C.A. 5, 1977), 518 F. 2d 972, 975. See *Whigham* v. *Bannon* (1926), 21 Ohio App. 496, 505-506, 153 N.E. 252, 255; *Holland* v. *State* (1920), 17 Ala. App. 503, 504, 86 So. 118, 119.

We hold that a client's disclosure to a third party of communications made pursuant to the attorney-client privilege breaches the confidentiality underlying the privilege, and constitutes a waiver thereof. In ruling that the confession to Holmok was admissible, the trial court did not commit error.

We further note that the statement of facts submitted to the court, subsequent to appellant's no contest plea, did not refer to the confession made to Holmok. The Holmok evidence was included in the record upon the insistence of appellant's counsel, for the purposes of appeal. Moreover, the statement of facts revealed that appellant confessed to several persons that he murdered Vantz. Appellant made no objection to the inclusion of these admissions in the record nor did he contest the verity of those statements.

## C

In his second proposition of law, appellant contends that his plea of no contest did not represent a voluntary and intelligent choice among the alternatives available to him, and therefore acceptance of the plea constituted plain error. Appellant argues that (1) he did not voluntarily waive his constitutional rights since the court failed to establish a factual basis for the plea, and (2) the plea could not be reconciled with his claim of innocence.

Crim R. 11(B)(2) states that a plea of no contest is not an admission of the defendant's guilt, but is an admission of the facts alleged in the indictment, information, or complaint. Before accepting a no contest plea, the court must ascertain whether the defendant's plea has been made knowingly and voluntarily with a full understanding of the effect of his plea. Crim. R. 11(C)(2) and (3).[4] Contrary to

---

[4] Crim. R. 11(C) provides in relevant part:

"* * *

"(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:

"(a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, and, if applicable, that he is not eligible for probation.

"(b) Informing him of and determining that he understands the effect of his plea of guilty or no contest, and that the court upon acceptance of the plea may proceed with judgment and sentence.

"(c) Informing him and determining that he understands that by his plea he is waiving his rights to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself.

"(3) With respect to aggravated murder committed on and after January 1, 1974, the defendant shall plead separately to the charge and to each specification, if any. A plea of guilty or no contest to the

appellant's assertion, however, Crim. R. 11 does not require the trial court to establish a factual basis for the plea before its acceptance. See *State* v. *Ricks* (1976), 48 Ohio App. 2d 128, 2 O.O. 3d 104, 356 N.E. 2d 312. See, also, *Roddy* v. *Black* (C.A. 6, 1975), 516 F. 2d 1380, 1385, certiorari denied (1975), 423 U.S. 917. *Hawk* v. *Berkemer* (C.A. 6, 1979), 610 F. 2d 445, 447, 18 O.O. 3d 396, 398, fn. 2; *King* v. *Perini* (N.D. Ohio 1976), 431 F. Supp. 481, 483, fn. 2.

Appellant relies principally on *dicta* in *North Carolina* v. *Alford* (1970), 400 U.S. 25, 38, 56 O.O. 2d 85, 91, fn. 10, wherein the court cautioned that guilty pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea. Nonetheless, the court in *Alford* found no constitutional bar to accepting a guilty plea in the face of an assertion of innocence provided a defendant voluntarily, knowingly and understandingly consents to sentencing on a charge. *Id.* at 37-38, 56 O.O. 2d at 91. Further, no constitutional error was found in accepting a guilty plea which contained a protestation of innocence, if the defendant intelligently concludes that his interests require entry of a guilty plea and if the record before the court contains strong evidence of guilt. *Id.*[5]

Turning to the facts at bar, we recognize that appellant asserted his innocence during the court-ordered psychological examination conducted in preparation of the pre-sentence report; however, the report was not before the court at the time appellant's plea was entered. There is no pro-bative evidence in the record that appellant otherwise coupled his plea with a protestation of innocence. In addition, there is convincing proof in the record that appellant understood the effect of his no contest plea, and that such plea was made knowingly and intelligently.

At the plea hearing, appellant submitted a nine-page petition to withdraw his prior plea of not guilty and enter a plea of no contest. The petition states, *inter alia*, that appellant had been advised of the charges against him and apprised of the penalties for each offense if convicted. Further, the petition admitted the truth of all the facts alleged in the indictment, and requested the court to accept appellant's no contest plea in accordance with the terms of the petition and the negotiations entered into between his counsel and the state. Before accepting appellant's plea, the court reviewed the petition in detail with appellant, engaging in an extensive colloquy with him to insure that he was fully aware of his constitutional rights and understood the consequences of his plea. Under these facts, we conclude that appellant's no contest plea was valid and properly accepted by the panel.

### D

In his third proposition of law, appellant raises the claim of ineffective assistance of counsel both at the guilt and sentencing phases of his trial. Appellant asserts that he was misguided into entering a plea of no contest though he received no benefit from the relinquishment of his constitutional rights. He further argues that defense

---

charge waives the defendant's right to a jury trial, and before accepting such plea the court shall so advise the defendant and determine that he understands the consequences of such plea. * * *"

[5] We note that although *Alford, supra,* involved a guilty plea, Crim. R. 11(C) applies to both no contest and guilty pleas; therefore, the rulings in *Alford* apply with equal force here.

counsel failed to establish a single mitigating factor.

In *Strickland* v. *Washington* (1984), 466 U.S. 668, the United States Supreme Court enunciated the following two-pronged standard for determining whether counsel's assistance was ineffective:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The *Strickland* standard was recently approved in *Burger* v. *Kemp* (1987), 483 U.S. ___, 97 L. Ed. 2d 638. Accord *State* v. *Smith* (1985), 17 Ohio St. 3d 98, 100, 17 OBR 219, 220-221, 477 N.E. 2d 1128, 1131; *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 395, 2 O.O. 3d 495, 497, 358 N.E. 2d 623, 626, vacated in part on other grounds (1978), 438 U.S. 910.

The court in *Strickland* noted that "[j]udicial scrutiny of counsel's performance must be highly deferential * * *," and "* * * a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland, supra,* at 689.

In applying these standards to the case *sub judice,* we find that appellant fails to meet his burden. Of course, many trial tactics may be questioned after an unfavorable result. A fair assessment of attorney performance requires us to eliminate the distorting effect of hindsight. Here, the record reveals that the change in plea was part of a strategy designed to pre-serve, for appellate review, the trial court's ruling on the motion *in limine.* Further, defense counsel was faced with overwhelming evidence of guilt, including several confessions by the appellant.

We disagree with appellant's contention that counsel failed to zealously represent him during the mitigation phase of the trial. The case at bar is distinguishable from *State* v. *Johnson* (1986), 24 Ohio St. 3d 87, 24 OBR 282, 494 N.E. 2d 1061, in which we vacated the death sentence after determining that defense counsel did not discuss the penalty phase with his client, had little time to present evidence of mitigating factors, and displayed a lack of preparation.

Here, defense counsel obtained stipulations as to the age of appellant; that he had no previous felony or juvenile record; and that the death penalty had not been imposed in any prior cases in Lorain County involving the charge of aggravated murder. In addition, defense counsel offered the testimony of appellant's common-law wife, stepmother and mother. The record shows that defense counsel conducted a thorough examination of each witness and elicited positive testimony relating to appellant's family life, his behavior, disposition and potential for rehabilitation. Counsel presented the testimony of Jane Core of the Ohio Public Defender Commission reporting the status of capital sentencing in the state of Ohio. Finally, appellant gave an unsworn statement during which he asked the victim's family for forgiveness, and begged for mercy from the three-judge panel. While these offerings carry little mitigating weight, as balanced against the appellant's aggravated murder conviction, we find that counsel presented the case in mitigation competently, and did the best they could with the facts available

to them. *Burger, supra.* We are not impressed by the lengthy list of additional mitigating evidence that appellant says should have been introduced at the mitigation stage. As this court stated in *Lytle, supra,* at 396, 2 O.O. 3d at 498, 358 N.E. 2d at 627:

"We deem it misleading to decide an issue of competency by using, as a measuring rod, only those criteria defined as the *best of available practice* in the defense field. There are many attorneys who fail to use the best available practices, yet relatively few who are found to be incompetent." (Emphasis *sic.*)

E

In his fourth proposition of law, appellant argues that the three-judge panel violated R.C. 2929.04(B) by failing to consider all the evidence presented in mitigation. Review of the panel's opinion shows that it considered each factor submitted in mitigation of the offense.[6]

Appellant further argues that the panel failed to weigh the mitigating evidence since the panel found that no mitigating factors existed. Although R.C. 2929.04(B) requires a trial court or three-judge panel to *consider* the factors enumerated therein, "* * * it does not require that court or panel to find that such evidence *establishes* a mitigating factor or factors." (Emphasis added.) *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 101, 512 N.E. 2d 598, 605. See, also, *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 129, 31 OBR 273, 289, 509 N.E. 2d 383, 399.

The panel in the case at bar concluded that appellant did not prove any mitigating factors by a preponderance

---

[6] The panel specified in its opinion that, pursuant to R.C. 2929.04(B), it considered and weighed against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, and the history, character and background of the offender. The panel further stated that it considered, "* * * particularly the factors stressed by defense counsel, viz.:

"O.R.C. 2929.04(B)(4) The youth of the offender.

"The panel considered the age of the defendant and found that he was not a youthful offender.

"O.R.C. 2929.04(B)(5) The offender's lack of significant history of prior criminal convictions and delinquency adjudications.

"The panel found no delinquency adjudications. The panel found the misdemeanor convictions reflected a tendency to violence.

"O.R.C. 2929.04(B)(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death.

"The panel considered under this factor of mitigation:

"1. The 'no contest' plea. The panel found this failed as an admission by the offender.

"2. The argument that this sentence should be proportionate to sentences of other capital crimes in Lorain County and the State of Ohio. The panel found such inapplicable as a mitigating factor under the case law of *Pully* v. *Harris,* 79 L. Ed. 2d 29; *State* v. *Jenkins,* 15 [Ohio St.] 3d 164, at page 208.

"3. Statement of the offender.

"The panel considered this factor in mitigation of possible sentence.

"4. The unindicted supplier of the weapon.

"The panel considered this statement of counsel in argument, but found no evidence to support the statement.

"Based upon all of the foregoing, the panel found unanimously that the state has proved the aggravat[ing] circumstances beyond a reasonable doubt, and the defendant did not prove the mitigating factors by a preponderance of the evidence, and the sentence of death should be imposed. * * *"

of the evidence. We hold that pursuant to R.C. 2929.04(B), the panel did not err in attributing no weight to the evidence presented in mitigation of the offense.

## F

In his fifth proposition of law, appellant asserts that he was condemned to death arbitrarily and capriciously since the three-judge panel rejected the evidence he submitted as mitigating while finding that similar factors were mitigating in prior Lorain County cases.[7]

Appellant has confused the sentencing court's responsibility under R.C. 2929.03(D) to consider the testimony and evidence presented during mitigation proceedings with a reviewing court's duty under R.C. 2929.05(A) to determine whether the sentence of death is appropriate in relation to the penalty imposed in similar cases.

R.C. 2929.03(D)(1) neither prescribes nor precludes the court or jury from considering evidence determined to be mitigating in similar cases. R.C. 2929.03(D)(1) requires the court or jury to consider the testimony and other evidence relevant to the aggravating circumstances the offender was found guilty of committing as well as "* * * the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, and any other factors in mitigation of the imposition of the sentence of death * * *." The defendant is to be given great latitude in presenting evidence of any mitigating factors. Arguably this could include the mitigating factors established in cases involving similar offenses.

The sentencing procedures in R.C.

2929.03(D)(1) are designed to promote objective consideration of the circumstances of the individual offense and the individual offender. To ask a jury or panel to make comparisons with the mitigating factors in other cases would be to send the jury or panel into the quagmire of weighing evidence in those other cases. Such would detract from, rather than further, the individual consideration which the defendant, standing at bar, should be given.

The proportionality review set forth in R.C 2929.05(A) provides an additional safeguard against arbitrary or capricious sentencing. "The fundamental purpose behind proportionality review is to ensure that sentencing authorities do not retreat to the pre-*Furman* era when sentences were imposed arbitrarily, capriciously, and indiscriminately. To achieve this result, state courts traditionally compare the overall course of conduct for which a capital crime has been charged with similar courses of conduct and the penalties inflicted in comparable cases." *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 176-177, 15 OBR 311, 322, 473 N.E. 2d 264, 279, certiorari denied (1985), 472 U.S. 1032, rehearing denied (1985), 473 U.S. 927.

Based on the foregoing, we hold that in determining sentence under R.C. 2929.03(D), the trial court, jury or three-judge panel is not required to compare the mitigating factors established in prior cases with the mitigating factors presented in the case before it. Therefore, the panel did not err in concluding that appellant had not proven any factors in mitigation despite alleged findings that

---

[7] Appellant submits that at the time he was indicted there were four previous capital murder indictments in Lorain County in which the death penalty was not imposed following a plea of guilty.

similar factors were established as mitigating in prior cases.

### G

Appellant contends in his sixth proposition of law that the three-judge panel committed prejudicial error in omitting from its opinion the reasons the aggravating circumstance outweighed the mitigating factors beyond a reasonable doubt, as required by R.C. 2929.03(F).

In its opinion the panel determined that the state proved the aggravating circumstance beyond a reasonable doubt, and that appellant did not prove any mitigating factors by a preponderance of the evidence. The difficulty stems from the panel's failure to state that the aggravating circumstance appellant was found guilty of committing outweighed the mitigating factors beyond a reasonable doubt and the reasons therefor.

We recently addressed a similar issue in *State* v. *Byrd* (1987), 32 Ohio St. 3d 79, 512 N.E. 2d 611. In that case the trial court found that the evidence did not support any mitigating factors, and concluded that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt. The court did not specifically state the reasons the aggravating circumstances were sufficient to outweigh the mitigating factors. We determined that "[i]n the absence of *any* mitigating factors, this is the only logical conclusion." *Id.* at 85, 512 N.E. 2d at 618-619. (Emphasis added.)

The same reasoning is applicable to the case *sub judice*. It is evident from the panel's opinion that it considered the aggravating circumstance appellant was found guilty of committing and weighed it against those factors presented in mitigation. Implicit in the panel's finding that no mitigating factors were proven is the deduction that there were no mitigating factors to be outweighed by the aggravating circumstance.[8]

### H

In his seventh proposition of law, appellant contends that the sentence of death must be reversed where the mitigating factors are not outweighed by the aggravating circumstances. We address this issue in Part II of this opinion, *infra,* pursuant to our duty to independently weigh the aggravating circumstances against the mitigating factors. See R.C. 2929.05(A).

### I

Appellant, in his eighth proposition of law, challenges the constitutionality of the proportionality review mandated in R.C. 2929.05(A).

We addressed the points raised by appellant in *State* v. *Steffen,* *supra,* where we held at paragraph one of the syllabus:

"The proportionality review required by R.C. 2929.05(A) is satisfied by a review of those cases already decided by the reviewing court in which the death penalty has been imposed."

We further ruled that "* * * [n]o reviewing court need consider any case where the death penalty was sought

---

[8] We do not condone noncompliance with R.C. 2929.03(F) by sentencing courts. The failure of a trial court or three-judge panel to fully articulate its findings and reasoning under R.C. 2929.03(F) disrupts the review procedures enacted by the Ohio Legislature. See *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 247, 15 OBR 379, 386, 473 N.E. 2d 768, 778, certiorari denied (1985), 472 U.S. 1012, rehearing denied (1985), 473 U.S. 924.

but not obtained or where the death sentence could have been sought but was not." *Id.* at 124, 31 OBR at 284, 509 N.E. 2d at 395. See, also, *Byrd, supra.*

The court below stated that there were no previous cases in Lorain County for comparison purposes; however, the court reviewed the sentencing opinions filed pursuant to R.C. 2929.03(F) and concluded that the death penalty in the case *sub judice* was not excessive or disproportionate to the penalty imposed in similar situations. The court of appeals discharged its duties under R.C. 2929.05(A).

### J

In his ninth proposition of law, appellant, for the first time, raises the claim that the three-judge panel erred by failing to conduct a trial *de novo* as to the existence of the specified aggravating circumstance. Appellant argues that such is required by Crim. R. 11(C).[9]

Appellant asserts that since Crim. R. 11(C)(4) refers to non-capital cases, the three-judge panel must, under Crim. R. 11(C)(3), conduct an evidentiary hearing at which the state must prove the existence of the aggravating circumstances beyond a reasonable doubt.

By entering a no contest plea, the accused admits the truth of the facts alleged in the indictment (Crim. R. 11[B][2]), and further waives the right to require the state to prove his guilt beyond a reasonable doubt at a trial (Crim. R. 11[C][2][c]). By inference, an evidentiary hearing is not necessary for the determination of whether the offense is aggravated murder or a lesser offense as such determination is based upon the facts contained and admitted in the indictment, information or complaint.

Crim R. 11(C)(3)(c), however, directs the court to "* * * proceed as provided by law to determine the presence or absence of the specified aggravating circumstances and of mitigating circumstances, and impose sentence accordingly." This section implicitly refers to the bifurcated proceedings for capital offenses under Ohio law.

R.C. 2945.06 provides that when a plea of guilty (or as here a plea of no contest) has been entered, "* * * a court composed of three judges *shall examine the witnesses, determine whether the accused is guilty of aggravated murder or any other offense, and pronounce sentence accordingly.* * * *" (Emphasis added.) R.C. 2945.06 further requires the court to follow the sentencing procedures contained in R.C. 2929.03 and 2929.04 in all cases where the offense is punishable by death.

We conclude that Crim. R. 11(C)(3)(c), when read *in pari materia* with R.C. 2945.06, requires the three-judge panel, upon acceptance of a no

---

[9] Crim R. 11(C) provides in relevant part:

"(3) * * * If the indictment contains one or more specifications which are not dismissed upon acceptance of a plea * * * to the charge, or if pleas * * * to both the charge and one or more specifications are accepted, a court composed of three judges shall: (a) determine whether the offense was aggravated murder or a lesser offense * * * (c) if the offense is determined to have been aggravated murder, *proceed as provided by law to determine the presence or absence of the specified aggravating circumstances and of mitigating circumstances, and impose sentence accordingly.*

"(4) With respect to all other cases the court need not take testimony upon a plea of guilty or no contest." (Emphasis added.)

contest plea to the charge of aggravated murder, to hear evidence in deciding whether the accused is *guilty* of aggravated murder beyond a reasonable doubt.

In the case *sub judice*, the prosecutor read the statement of facts into the record after the court's acceptance of appellant's plea but prior to its determination of guilt. A fair reading of the transcript indicates that the parties agreed that the statement of facts proffered by the state would constitute the sole evidence of aggravating circumstances before the court. This is more clearly evidenced by the certificate of defense counsel which was read in open court and signed in appellant's presence. The last paragraph of this document reads:

"By voluntarily entering this plea of no contest, *Defendant understands that we, as his attorneys, will not contest nor deny the truth of the allegations contained in the prosecuting attorney's explanation of circumstances or statement of facts* to the Court of three Judges upon tendering said plea." (Emphasis added.)

Further, prior to the pronouncement of the court's guilt finding, the following dialogue took place between defense counsel and the court:

"MR. DUFF: I want to make it clear, Your Honor, that our no contest plea, as I understand the law, is that admission of the facts contained in the indictment, and I don't want that to be misconstrued in any way that we agree or concur in their statement of facts; that they're not a stipulated statement of facts, they're the prosecutor's statement of facts.

"JUDGE HARRIS: You don't have to agree or concur, but you were afforded the opportunity to present whatever you wanted to present in contradiction thereto; and you haven't presented anything, so the only thing

this Court has is the statement of Mr. Nagy.

"MR. DUFF: All right. As long as that's understood."

Agreements, waivers and stipulations made by the accused, or by the accused's counsel in his presence, during the course of a criminal trial are binding and enforceable. See *State* v. *Robbins* (1964), 176 Ohio St. 362, 27 O.O. 2d 312, 199 N.E. 2d 742, paragraph two of the syllabus. Although R.C. 2945.06 requires the court to "examine the witnesses" in determining whether the accused is guilty of aggravated murder, we find that appellant was bound by the agreed-upon procedure wherein the state would proffer a statement of facts in lieu of witnesses or other evidence.

### K

In his tenth and eleventh propositions of law, appellant challenges the constitutionality of the death penalty statute in Ohio. Specifically, appellant asserts that the mandatory sentencing scheme and those provisions governing the imposition of the death sentence violate the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I, of the Ohio Constitution. Appellant concedes that these arguments were previously addressed by this court in *State* v. *Jenkins, supra,* at 168-169, 172-173, 15 OBR at 315-316, 318-319, 473 N.E. 2d at 273-274, 276-277, and *State* v. *Maurer, supra,* at 241-242, 15 OBR at 381-382, 473 N.E. 2d at 773-775. We decline the invitation to overrule *Jenkins* and, therefore, reject appellant's propositions ten and eleven.

### II

Having addressed the issues raised in appellant's propositions of law, we turn to an independent weighing of the aggravating circumstance and the

mitigating factors as required under R.C. 2929.05(A).

Appellant was sentenced on the basis of having been found guilty of one aggravating circumstance proved beyond a reasonable doubt, *viz.*: that he committed a murder while committing an aggravated robbery in possession of a firearm, and that he was the principal offender.

Against this aggravating circumstance we weigh all mitigating factors drawn from: (1) the nature and circumstances of the offense, (2) the history, background and character of appellant, and (3) any of the factors listed in R.C. 2929.04(B)(1) through (7) which exist in this case.

We find nothing in the nature and circumstances of Vantz's murder to mitigate appellant's offense.

We have reviewed the evidence submitted by appellant in relation to his history, background and character. The psychological evaluation submitted on appellant's behalf states that "* * * he is not a psychiatrically disturbed individual * * *. Rather, he [is] a marginally adjusted individual who copes with life's problems ineffectively and who lacks maturity and sound judgement [*sic*]· that are common to reasonably well-adjusted adults." The report further indicates that appellant's past conduct does not reflect serious anti-social or violent behavior, although it notes his minor drug involvement. We attribute little mitigating weight to this evidence.

At the mitigation hearing, Post's common-law wife, mother and stepmother testified on his behalf. Their testimony reflected that he was a loving, non-violent person and a caring father with two sickly children who need him. We find that these factors carry minimal weight as mitigating given the nature of the crime. Post's mother, common-law wife and step-

mother characterized him as a follower, not a leader; however, this evidence is rebutted by the fact that he acted alone. Accordingly, we give this evidence no weight as a mitigating factor.

We have examined Post's unsworn statement asking the victim's family for forgiveness and find' that retrospective remorse is to be accorded little weight in mitigation of sentence. Appellant also introduced statistics establishing that at the time of his conviction only one defendant had been sentenced to death of the twenty no contest or guilty pleas entered for aggravated murder. These statistics have no mitigating value in this case.

Focusing now on the mitigating factors delineated in R.C. 2929.04(B)(1) through (7), we conclude that the victim neither induced nor facilitated the offense; that appellant was under no apparent duress, coercion, or strong provocation; and that appellant suffered from no known mental disease or defect which would have impaired his capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of the law. Therefore, the factors contained in R.C. 2929.04(B)(1), (2) and (3) are inapplicable to the case at bar. We further find that the factor found in R.C. 2929.04(B)(6) is inapplicable to the case at bar since Post was determined to be the principal offender.

Pursuant to R.C. 2929.04(B)(4), we have considered appellant's age (twenty-four) at the time of the offense and find that it is not a mitigating factor. As we stated in *Byrd, supra,* at 81, 512 N.E. 2d at 615, "[a]lthough R.C. 2929.04(B) lists youth as a factor to be considered, it does not require anyone under a certain age to be absolved of culpability for his crime." This is true particularly where there is "* * * no

evidence to suggest that * * * age [is] of any relevance in the crime or sentence of death." *Id.*

The pre-sentence investigation report reveals that appellant had no prior arrest history as a juvenile. See R.C. 2929.04(B)(5). Nonetheless, as an adult, Post was convicted of the following misdemeanor offenses: vandalism, shoplifting, possession of a dangerous ordnance, theft and assault. We accord no weight to this evidence as mitigating.

Finally, the appellant entered a no contest plea to the charges in the indictment. The entry of said plea was inspired by an appeal strategy and, thus, we give little weight to this factor.

Based on the foregoing, we conclude that the aggravating circumstance outweighs the factors presented in mitigation beyond a reasonable doubt.

### III

Our final task is to determine whether the sentence of death is appropriate. In discharging this duty pursuant to R.C. 2929.05(A), we have compared the sentence in this case with those cases we have previously reviewed in which the death penalty has been imposed. See *Steffen* and *Stumpf, supra.*[10]

Having carefully considered the aforementioned cases, we find that, in comparison, the death sentence imposed in the case *sub judice* is appropriate and is neither excessive nor disproportionate.

### IV

In conclusion, we uphold appellant's conviction and sentence of death. We are satisfied that the aggravating circumstance appellant was found guilty of committing outweighs the mitigating factors beyond a reasonable doubt. Finally, our proportionality review convinces us that the sentence of death is appropriate under the facts of this case.

Accordingly, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS and WRIGHT, JJ., concur.

---

[10] Our review establishes that we have upheld the death sentence as appropriate in the following cases involving aggravated robbery and murder: *State* v. *Martin* (1985), 19 Ohio St. 3d 122, 19 OBR 330, 483 N.E. 2d 1157, certiorari denied (1986), 474 U.S. 1073 (aggravated robbery-murder of drugstore owner and no significant evidence offered in mitigation); *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 23 OBR 13, 490 N.E. 2d 906, certiorari denied (1987), 480 U.S. ___, 94 L. Ed. 2d 699, rehearing denied (1987), 481 U.S. ___, 95 L. Ed. 2d 537 (aggravated robbery-murder of elderly woman with meager evidence submitted in mitigation); *State* v. *Barnes* (1986), 25 Ohio St. 3d 203, 25 OBR 266, 495 N.E. 2d 922, certiorari denied (1987), 480 U.S. ___, 94 L. Ed. 2d 701 (murder of a night porter at a bar during commission of aggravated burglary and aggravated robbery); *State* v. *Scott* (1986), 26 Ohio St. 3d 92, 26 OBR 79, 497 N.E. 2d 55, certiorari denied (1987), 480 U.S. ___, 94 L. Ed. 2d 699, rehearing denied (1987), 481 U.S. ___, 95 L. Ed. 2d 538 (murder of delicatessen owner during aggravated robbery of her establishment): *State* v. *Byrd, supra* (murder of night clerk at store during course of aggravated robbery).