The STATE of Ohio, Appellee,

v.

McDERMOTT et al., Appellants.

[Cite as *State v. McDermott* (1991), 73 Ohio App.3d 689.]

Court of Appeals of Ohio,
Lucas County.

No. L–90–362.

Decided June 28, 1991.

*Anthony G. Pizza,* Prosecuting Attorney, and *J. Christopher Anderson,* for appellee.

*Jon D. Richardson,* for appellant, John Lawrence.

*Charles M. Boss* and *Richard M. Kerger,* for appellant, Jeffrey McDermott.

*John P. Duffin,* urging reversal for *amicus curiae* Ohio Association of Criminal Defense Lawyers.

---

*Per Curiam.*

This is an appeal from a judgment of the Lucas County Court of Common Pleas in which the trial court found appellant, attorney John Lawrence, in criminal contempt of court. The Ohio Association of Criminal Defense Lawyers has filed a brief *amicus curiae* in support of John Lawrence.

The facts giving rise to this appeal are as follows. On May 30, 1990, appellant, Jeffrey McDermott, was indicted for the June 1985 aggravated murder of Elwood McKown. On October 10, 1990, McDermott filed a document asserting that the Lucas County Prosecutor's Office planned to call McDermott's former attorney, John Lawrence, before the grand jury to testify as to McDermott's involvement in the murder of McKown.[1] McDermott objected to this action, arguing that the prosecutor's office was attempting to violate the attorney-client privilege, thereby abusing the grand jury process. On October 16, 1990, McDermott filed a motion *in limine* asking the court to preclude the testimony of John Lawrence before the grand jury. On October 17, 1990, the state filed a motion to compel the grand jury testimony of John Lawrence.

At an October 17, 1990 hearing on the motion to compel and motion *in limine,* Warren Lawrence, brother of attorney John Lawrence, testified that McDermott had told him of a conversation that he had had with John

---

1. The case against John Lawrence began with the filing of this document captioned "In Re Lucas County Grand Jury Proceedings." The assigned case number was Misc. No. 438. Pursuant to a *nunc pro tunc* order on January 16, 1991, the contempt order appealed from in this case was amended to reflect that the order was entered in Misc. No. 438 and CR90–6226, *State v. Jeffrey McDermott.*

Lawrence, in which McDermott had stated to John Lawrence he had killed McKown. John Lawrence then testified that he had represented McDermott on three separate occasions and that any conversations he had had with McDermott in June 1985 were in his role as an attorney.

In a November 9, 1990 opinion, after finding the state's motion to compel moot, the court expressed concern that Warren Lawrence's testimony regarding conversations between McDermott and John Lawrence had not been corroborated with other evidence. The court did find, however, that Warren Lawrence's testimony at least raised a presumption that McDermott had waived the attorney/client privilege. The court went on to state:

"Since the state's witness has raised the presumption, it makes sense to now require the attorney John Lawrence to answer specific leading questions to verify whether there actually was a waiver. The parties have access to the transcript of October 17, 1990 to craft these leading questions. If John Lawrence denies the conversation as Warren testified it was repeated, then Warren Lawrence's testimony on waiver is uncorroborated and the presumption that waiver occurred is overcome. If, on the other hand, John Lawrence answers yes to the leading questions, then Warren's testimony is corroborated and the state has established a *prima facie* showing of waiver. John Lawrence will then be expected to testify on what Jeffrey McDermott voluntarily repeated to Warren Lawrence. The scope of waiver will be limited."

By so ordering, the court has set forth a two-step process for testing the existence of a waiver in the context of the attorney-client privilege. First, there must be a "witness to testify credibly to raise a presumption" of waiver. Second, the attorney must testify to corroborate the existence of waiver. In furtherance of this test, John Lawrence was ordered to appear at a preliminary hearing under Evid.R. 104 for limited questioning on the presumed waiver by McDermott of the attorney-client privilege.

At the November 16, 1990 hearing, John Lawrence appeared and was sworn; however, prior to any questions being asked by the court, counsel for John Lawrence advised the court that his client would refuse to answer any questions on the basis of the attorney-client privilege. Consequently, the court found John Lawrence to be in criminal contempt of court.[2] He was sentenced to a thirty-day jail term and a fine of $250. The entire sentence was stayed for purposes of perfecting an appeal.

Appellant John Lawrence sets forth the following assignments of error:

---

2. It should be noted that John Lawrence was not asked any questions by the court which he refused to answer.

"1. The Court below erred in failing to strictly apply the statutory language of Section 2317.02 for waiver of an attorney/client privilege.

"2. The Court below erred in concluding, pursuant to a hearing on the admissibility of evidence, that there had been sufficient evidence to establish a 'presumption' that the privilege had been waived and that the testimony of Mr. Lawrence on that issue would be necessary and compelled.

"3. The Court erred in determining that the work product doctrine did not apply in requiring John Lawrence to testify against his client, Mr. McDermott.

"4. The Court erred in denying Mr. McDermott his constitutional rights in ordering John Lawrence to testify."

Appellant Jeffrey McDermott sets forth the following assignments of error:

"1. The Court erred in finding that an inadvertent and uncounseled waiver of the attorney-client privilege by a criminal defendant was sufficient to require his former attorney to testify about communications between them.

"2. The Court denied appellant's rights under the Fifth and Sixth Amendments of the United States Constitution and the Constitution of the State of Ohio by requiring a former attorney to testify against him absent an effective waiver of the attorney-client privilege.

"3. The Court erred in requiring a former attorney for appellant to testify as to communications with his client when such communication would be protected by the work product doctrine.

"4. The Court denied appellant his right to a fair hearing by precluding the admission of expert testimony as to the impact of the Court's ruling on the criminal justice system.

"5. The Court erred in failing to limit the scope of cross-examination of defendant."

■ Our scope of review in this case as it stands now is limited to the validity of the court's November 9, 1990 contempt citation. This court will not reverse the lower court's finding of contempt absent an abuse of discretion. *Denovchek v. Trumbull Cty. Commrs.* (1988), 36 Ohio St.3d 14, 16, 520 N.E.2d 1362, 1364; *State ex rel. Ventrone v. Birkel* (1981), 65 Ohio St.2d 10, 11, 19 O.O.3d 191, 191, 417 N.E.2d 1249, 1249.

■ Attorney John Lawrence asserts the attorney-client privilege in defense of his contempt citation. The attorney-client privilege is codified in R.C. 2317.02(A) and states as follows:

"Privileged communications and acts.

"The following persons shall not testify in certain respects:

"(A) *An attorney, concerning a communication made to him by his client in that relation* or his advice to his client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client and except that, if the client voluntarily testifies or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject[.]" (Emphasis added.)

The purpose behind the attorney-client privilege is to encourage a client to disclose all known facts of their cases without fear that any of the disclosed facts will be used against them. *Walsh v. Barcelona* (1984), 16 Ohio App.3d 470, 472, 16 OBR 553, 553, 476 N.E.2d 1090, 1092. The privilege belongs to the client and therefore only the client is capable of waiving the privilege. *King v. Barrett* (1860), 11 Ohio St. 261. One of the ways a client can waive the privilege is by disclosing privileged communications to a third party. *State v. Post* (1987), 32 Ohio St.3d 380, 513 N.E.2d 754, paragraph one of the syllabus.

As stated above, John Lawrence was found in contempt of court because he stated he would refuse to answer questions regarding conversations he had with his client, Jeffrey McDermott, in June 1985. By ordering John Lawrence to testify, the court was attempting to either corroborate Warren Lawrence's testimony or contradict Warren Lawrence's testimony, thereby providing the court with sufficient information to decide the issue of whether or not McDermott waived his attorney-client privilege by disclosing facts to Warren Lawrence.

An attorney under R.C. 2317.02(A) cannot be compelled to testify concerning a communication made to him by his client absent a waiver of the attorney-client privilege. In this case, however, the court has ordered the attorney to testify and effectively breach the attorney-client privilege, so that it may determine if there has been a waiver of that privilege. Since the trial court has *never* definitively found that McDermott waived his attorney-client privilege, this court finds that R.C. 2317.02(A) releases attorney John Lawrence from testifying as to communications he had with McDermott in June 1985 and the trial court abused its discretion in ordering him to do so. In deciding the waiver issue, the court must rather look to the credibility of those witnesses that are otherwise permitted to testify. Accordingly, appellant Lawrence's first, second and fourth assignments of error are found well taken. Given our disposition of appellant's first, second and fourth assignments of error, appellant Lawrence's third assignment of error is found not well taken. Appellant McDermott's first and second assignments of error are

found well taken. Given our disposition of appellant McDermott's first and second assignments of error, appellant McDermott's third, fourth and fifth assignments of error are found not well taken.

On consideration whereof, the court finds that substantial justice has not been done the parties complaining, and judgment of the Lucas County Court of Common Pleas is reversed and remanded. Costs to appellee.

*Judgment reversed and cause remanded.*

GLASSER, ABOOD and MELVIN L. RESNICK, JJ., concur.