The STATE of Ohio, Appellant and Cross–Appellee,

v.

McDERMOTT, Appellee and Cross–Appellant.

[Cite as *State v. McDermott* (1992), 79 Ohio App.3d 772.]

Court of Appeals of Ohio,
Lucas County.

No. L–91–354.

Decided May 15, 1992.

*Anthony G. Pizza,* Prosecuting Attorney, *J. Christopher Anderson* and *John H. Schaeffer,* Assistant Prosecuting Attorneys, for appellant.

*Jon D. Richardson,* for John Lawrence.

*Charles M. Boss* and *Richard M. Kerger,* for appellee Jeffrey McDermott.

ABOOD, Judge.

This is an appeal and a cross-appeal from an order of the Lucas County Court of Common Pleas that permitted attorney John Lawrence to assert the attorney-client privilege and refuse to answer questions about conversations between himself and his former client, defendant-appellee and cross-appellant, Jeffrey McDermott.

Appellant, state of Ohio, sets forth one assignment of error:

"The trial court abused its discretion in finding that the state had not established a waiver of the attorney-client privilege by the defendant."

McDermott sets forth one assignment of error in support of his cross-appeal:

"The Court erred in finding a 'voluntary' disclosure to third parties was sufficient to waive the attorney-client privilege when the Court of Appeals, in the same case, had previously held that such waiver must be advertent and counseled."

This appeal arises out of the continuing efforts of the state to obtain the testimony of attorney John Lawrence as to conversations he allegedly had on or about June 29, 1985, with his former client, Jeffrey McDermott, regarding the murder of Elwood Poe McKown.

The facts that are relevant to a determination of the issues raised by this appeal are as follows. On May 30, 1990, McDermott was indicted for the June 1985 aggravated murder of McKown. As part of its continuing investigation, the state made it known that it planned to call John Lawrence before the grand jury to testify as to his knowledge of McDermott's involvement in the murder. On October 17, 1990, a hearing was held to determine whether John Lawrence could be called to testify.[1] At that hearing, Warren Lawrence,

---

1. The events leading up to the October 17, 1990 hearing are as follows. On October 10, 1990, McDermott filed a document asserting that the Lucas County prosecutor's office planned to call John Lawrence to testify and that this would result in violation of the attorney-client privilege, thereby abusing the grand jury process. This document was captioned "In Re Lucas County Grand Jury Proceedings" and was assigned case No. Misc. 438. On October 16, 1990, McDermott filed a motion *in limine* in this case. On October 17, 1990, the state filed a motion to compel John Lawrence's testimony. Since orders were

brother of John Lawrence, testified that McDermott had told him of a conversation that he had had with John Lawrence, in which McDermott stated to John Lawrence that he killed McKown.

John Lawrence then testified that he had represented McDermott on three separate occasions, that in June 1985 he was engaged in active representation of McDermott and that any conversations he had with McDermott in June 1985 were in his role as McDermott's attorney. On November 9, 1990, the trial court found that Warren Lawrence's testimony had not been corroborated with other evidence but that his testimony raised a presumption that McDermott had waived the attorney-client privilege. The court then ordered John Lawrence to appear at a preliminary hearing, under Evid.R. 104, for limited questioning as to the presumed waiver by McDermott of the attorney-client privilege. On November 16, 1990, John Lawrence appeared in the trial court with counsel who advised the court that his client would refuse to answer any questions on the basis of the attorney-client privilege. The court found John Lawrence to be in criminal contempt of court, sentenced him to a thirty-day jail term and imposed a fine of $250. John Lawrence and McDermott appealed that order of contempt to this court. Pursuant to that appeal, McDermott, in part, set forth the following assignment of error:

"1. The Court erred in finding that an inadvertent and uncounseled waiver of the attorney-client privilege by a criminal defendant was sufficient to require his former attorney to testify about communications between them."

In *State v. McDermott* (1991), 73 Ohio App.3d 689, 598 N.E.2d 147, this court found that the trial court had abused its discretion by ordering John Lawrence to testify at the November 16, 1990 hearing without first determining, based on the testimony of witnesses other than John Lawrence, that McDermott had waived his attorney-client privilege. Accordingly, we found McDermott's first assignment of error well taken, released John Lawrence from the contempt citation and remanded the case to the trial court for further proceedings.

On July 31, 1991, the trial court held another hearing to determine whether McDermott had waived his attorney-client privilege. At that hearing, testimony was elicited from Ralph Tatkowski, Warren Lawrence, and Detectives Thomas Ross and John Wirth. Tatkowski testified in part that McDermott had told him that " * * * John Lawrence told him (McDermott) to take it (the

issued by the trial court in both cases, and since this court on January 28, 1991 consolidated these proceedings under Lucas App. No. L–90–362, no further reference will be made in this opinion to case No. Misc. 438.

gun) apart and throw it in the sewer." On October 4, 1991, the trial court filed its opinion and journal entry finding, in pertinent part, as follows:

"The *Post* case must be distinguished. First, in *Post*, the privileged communication was a specific statement rather than an entire conversation with an attorney. Here, an entire attorney-client conversation is alleged to have occurred in 1985, at least five years before the witnesses' first testimony. Second, Post's statement was in writing so there was no question about its content. Here, the two State witnesses did not offer precise words repeated by McDermott. Their testimony instead was subjective, open to interpretation. Third, Post repeated the same confession given to his attorney to another inmate. Here, the third parties involved do not testify congruently or repeat exact words of an alleged conversation. Fourth, Warren Lawrence and Ralph Tatkowski simply can not tell us if what McDermott allegedly said is what actually transpired between McDermott and John Lawrence. Fifth, in *Post*, the evidence of the written statement was allowed into evidence. Here, the State is attempting to compel an attorney to actively testify. Overall, the particular facts of this case illustrate how difficult it will be to apply the rule of *Post* to establish voluntary disclosure of an entire conversation between attorney and client so that waiver is deemed to have occurred.

" * * * [The testimony] is insufficient [for the state] to prove disclosure of a confidential communication by whatever standard of proof is used, either clear and convincing or preponderance of the evidence. * * *

" * * * *We simply rule that the State of Ohio has not provided sufficient credible evidence that Jeffrey McDermott repeated to third parties exact statements made to or by attorney John Lawrence so as to say McDermott waived his attorney-client privilege.*

" * * * *[W]here the claimed privileged communication is an entire conversation with an attorney * * * we must first find that a defendant has voluntarily disclosed to third parties the actual content of that communication.*

" * * *

"The Court therefore finds that the State of Ohio has not established a waiver of the attorney-client privilege by Jeffrey McDermott. Attorney John Lawrence will be allowed to assert the attorney-client privilege if he is called to be a witness at the trial of *State of Ohio* v. *Jeffrey McDermott*, Case No. 90–6226." (Emphasis added.)

It is from this judgment that the state brings this appeal and McDermott brings his cross-appeal.

## I. THE STATE'S APPEAL

In its sole assignment of error, the state contends that the trial court abused its discretion by finding that the evidence did not establish that McDermott waived his attorney-client privilege. In support, the state argues that the trial court misapplied the Supreme Court of Ohio's decision in *State v. Post* (1987), 32 Ohio St.3d 380, 513 N.E.2d 754, and that a correct application of *Post* requires a finding that waiver occurred in this case.

McDermott and attorney John Lawrence respond that the trial court, in distinguishing *Post*, was merely finding the testimony of the state's witnesses not to be credible.

■ In *Post*, paragraph one of the syllabus, the Supreme Court of Ohio held that:

"A client's disclosure to a third party of communications made pursuant to the attorney-client privilege breaches the confidentiality underlying the privilege, and constitutes a waiver thereof."

It appears clear from the trial court's opinion in this case that it interpreted *Post* as precluding a finding that the attorney-client privilege was waived by McDermott unless the state proves that McDermott disclosed to a third party the exact content of the entire protected communications that took place between himself and attorney John Lawrence. As to McDermott's and attorney John Lawrence's contention that in distinguishing *Post*, the trial court was merely finding the state's witnesses not to be credible, nowhere in the trial court's decision is it indicated that such testimony was considered not to be credible to establish anything other than whether the exact content of the entire communication was disclosed to a third party.

The issue presented by appellant's assignment of error is whether the trial court erred in holding that the attorney-client privilege cannot be found to have been waived by a criminal defendant unless the state proves that the client disclosed to a third party the *exact* content of an *entire* communication made pursuant to the privilege.

■ The rationale underlying the attorney-client privilege is that, in order to promote access to legal advice and representation, it is necessary to eliminate the apprehension of compelled disclosure of communications essential to such consultation. 8 Wigmore, Evidence (McNaughton Rev.1961) 545, Section 2291; *United States v. United Shoe Mach. Corp.* (D.C.Mass.1950), 89 F.Supp. 357, 358. The privilege is both premised on and circumscribed by confidentiality. " ' "The moment confidence ceases," ' said Lord Eldon, ' "privilege ceases." ' " *Post, supra*, 32 Ohio St.3d at 385, 513 N.E.2d at 760, quoting 8 Wigmore, *supra*, at 599, Section 2311. "Any disclosure inconsistent

with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege." *United States v. Jones* (C.A.4, 1982), 696 F.2d 1069, 1072; see, also, *In re Sealed Case* (C.A.D.C.1982), 676 F.2d 793, 809; *United States v. Cochran* (C.A.5, 1977), 546 F.2d 27, 29; *United States v. Gordon–Nikkar* (C.A.5, 1975), 518 F.2d 972, 975. Waiver may be implied, therefore, where the "content" of the protected communication is disclosed to a third party, *Post, supra*, 32 Ohio St.3d at 385, 513 N.E.2d at 760; *Travelers Indemn. Co. v. Cochrane* (1951), 155 Ohio St. 305, 316, 44 O.O. 302, 307, 98 N.E.2d 840, 846, where the "facts and circumstances" of the subject matter covered by the protected communication is disclosed to a third party, *Travelers Indemn. Co., supra*, at 316–317, 44 O.O. at 307–308, 98 N.E.2d at 846–847, where the "substance" of the communication is disclosed, *Jones, supra*, at 1072, explaining *United States v. Cote* (C.A.8, 1972), 456 F.2d 142, 144, or where there is " * * * merely an assertion about, the communication * * * ". *United States v. Aronoff* (S.D.N.Y.1979), 466 F.Supp. 855, 862. In deciding whether an implied waiver has occurred,

" * * * regard must be had to the double elements that are predicated in every waiver, i.e., not only the element of implied intention, but also the element of fairness and consistency. A privileged person would seldom be found to waive, if his intention not to abandon could alone control the situation. There is always also the objective consideration that when his conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or to disclose, but after a certain point his election must remain final." 8 Wigmore, *supra*, at 636, Section 2327; see, also, *In re Sealed Case* (C.A.D.C.1989), 877 F.2d 976, 980; *Weil v. Investment/Indicators Research & Mgt., Inc.* (C.A.9, 1981), 647 F.2d 18, 24; *Aronoff, supra*, at 862.

As to the scope of waiver, any disclosure to a third party that is inconsistent with the maintenance of confidentiality waives the privilege not only as to the communication disclosed, but may also waive the privilege as to other communications made during the same consultation and all other communications relating to the same subject.[2] *In re Sealed Case, supra*, 877

---

**2.** It should be noted that R.C. 2317.02 does not change the common law with reference to implied waiver of the attorney-client privilege. R.C. 2317.02 provides, in pertinent part, that:

"The following persons shall not testify in certain respects:

"(A) An attorney, concerning a communication made to him by his client in that relation or his advice to his client, except that the attorney may testify by express consent of the

F.2d at 980–981; *Jones, supra,* at 1072; *In re Sealed Case, supra,* 676 F.2d at 809; *Weil, supra,* at 24; *Aronoff, supra,* at 862. It is within the discretion of the trial court to determine to what extent the privilege was waived in light of the disclosure and the factual context in which the privilege is asserted. *In re Sealed Case, supra,* 877 F.2d at 981; *Jones, supra,* at 1072; *In re Sealed Case, supra,* 676 F.2d at 809, fn. 54; *Weil, supra,* at 25; *Aronoff, supra,* at 862.

■ As to the burden of proof, as with all evidentiary privileges, "[i]t is the well-settled rule that the burden of showing that testimony ought to be excluded under this doctrine of privileged communications rests upon the party seeking to exclude it * * * ". *In re Martin* (1943), 141 Ohio St. 87, 103, 25 O.O. 225, 232, 47 N.E.2d 388, 395; see, also, *Jones, supra,* at 1072; *Weil, supra,* at 25. "One of the elements that the asserting party must prove is that it has not waived the privilege." *Weil, supra,* at 25; see, also, *Jones, supra,* at 1072.

■ Upon consideration of the entire record of proceedings that was before the trial court, and the law as set forth above, this court finds: a waiver of the attorney-client privilege occurs when the client discloses communications that were made pursuant to the privilege to a third-party; any such disclosure that is inconsistent with the maintenance of the confidential nature of the attorney-client relationship waives the attorney-client privilege; and, therefore, the trial court erred in holding that McDermott cannot be found to have waived his attorney-client privilege unless the state proves that McDermott disclosed to a third party the *exact* content of the *entire* communication that occurred between him and attorney John Lawrence.

Accordingly, the state's sole assignment of error is well taken.

## II. McDERMOTT'S CROSS–APPEAL

In his assignment of error in support of his cross-appeal, McDermott contends that the trial court erred in finding that an inadvertent or uncoun-

---

client * * * and except that, if the client voluntarily testifies * * * the attorney may be compelled to testify on the same subject."

Although the statute only provides for waiver by consent or voluntary testimony by the client, it is nevertheless recognized that waiver may be implied by disclosure to third parties. Since confidentiality is destroyed by disclosure to a third party, and the privilege along with it, it was unnecessary for the legislature to provide for such a waiver. *Post, supra,* 32 Ohio St.3d at 385, 513 N.E.2d at 760; *Whigham v. Bannon* (1926), 21 Ohio App. 496, 505, 153 N.E. 252.

Under the same reasoning, the fact that the legislature used the term "same subject" to describe the scope of testimony that may be compelled from an attorney whose client voluntarily testified does not preclude recognition of the common-law rule that a client who waives the privilege by disclosing confidential communications to a third party may also waive as to all communications on the same subject.

seled, voluntary disclosure to third parties was sufficient to constitute a waiver of his attorney-client privilege. In support, he argues that by virtue of our decision in *State v. McDermott, supra,* the "law of the case" became that a disclosure to third parties cannot amount to a waiver unless it is *"advertent and counseled."*

In rendering our decision in *State v. McDermott, supra,* we noted that "[o]ur scope of review in this case as it stands now is limited to the validity of the court's November 9, 1990 contempt citation." The sole basis on which we reversed the contempt citation in that case was that the trial court erred in compelling John Lawrence to testify before determining that a waiver had, in fact, occurred. We found McDermott's first assignment of error to be well taken, not on the basis that the trial court failed to find the waiver to be intentional and counseled, but on the basis that the trial court failed to find a waiver. This court did not make a determination as to the propriety of that portion of McDermott's first assignment of error in that appeal that contended that a waiver must be based on an intentional and counseled disclosure, and specifically excluded such a determination from the scope of our review.

Accordingly, McDermott's sole assignment of error in support of his cross-appeal is not well taken.

On consideration whereof, this court finds that substantial justice has not been done the party complaining as to the state's appeal, and the judgment of the Lucas County Court of Common Pleas is reversed. This case is remanded to that court for a determination as to the existence and scope of a waiver in accordance with the law as set forth in this opinion.

*Judgment reversed*
*and cause remanded.*

MELVIN L. RESNICK and SHERCK, JJ., concur.