### State v. Doss
### Case No. 56569
### Cuyahoga County, (8th)
### Decided February 1, 1990
[Cite as 1 AOA 282]

*For Plaintiff-Appellee, John T. Corrigan, Cuyahoga County Prosecuting Attorney, George Lonjak, Assistant Prosecuting Attorney, The Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113,*

*For Defendant-Appellant, Robert Dixon, ESQ., 1280 West Third Street, Cleveland, Ohio 44113.*

J.F. CORRIGAN, J.,

The defendant appeals from his bench trial conviction for felonious assault with an aggravated felony specification. The county grand jury originally indicted the defendant for murder. However, the trial court, at the close of the state's evidence, reduced the charge to involuntary manslaughter specifying felonious assault as the underlying felony. The trial court ultimately convicted the defendant of felonious assault as a lesser included offense of involuntary manslaughter.

The defendant raises three assignment of error for our review. He first asserts that the trial court erred in reducing the original murder

charge to involuntary manslaughter arguing that involuntary manslaughter does not constitute a lesser included offense of murder.

The defendant, in his second assignment of error, challenges the sufficiency of the evidence supporting his conviction for felonious assault. He finally argues that he was denied the effective assistance of counsel at trial. Each of these claims lack merit, so we affirm the trial court's judgment.

## I.

The victim died from a ruptured brain aneurysm on November 10, 1987 after being hospitalized for treatment of injuries sustained in an attack during the early morning hours of October 3, 1987. Friends found the victim, semi-conscious from an apparent beating, in the front room of the house where the victim lived with a friend, the defendant, and the defendant's mother.

At trial, the state sought to prove that the defendant had beaten the victim with a table leg and that this beating caused the rupturing of the aneurysm. The state called as witnesses in support of its case the victim's friend who claimed that he witnessed the attack, the defendant's daughter, a neighbor, and a county coroner. The defendant at trial argued that the victim's friend had administered the beating and that, regardless of the identity of the attacker the beating had not proximately caused the rupturing of the victim's aneurysm. The defendant testified on his own behalf and also called his mother as a witness.

The victim's friend testified that although the two were brothers-in-law, the victim and the defendant did not get along. He claimed that the defendant injured the victim during a fight one time before. The witness stated that the defendant's mother hid the household knives from the two.

The victim's friend testified that two days before the attack the victim complained of having a severe headache. Thereupon the defendant and the victim's friend left in order to summon a paramedic squad, leaving the victim in the house. Upon their return the defendant noticed that his television set was missing. The emergency squad arrived but the victim refused any treatment. Later the defendant told the victim's friend that he suspected that the victim had stolen his television set.

The witness testified that shortly after midnight on October 3 he observed the victim sleeping on the floor of the front room of the house. The victim's friend testified that that night he himself was watching television with the defendant's mother in the kitchen.

The victim's friend stated that at approximately 4:00 a.m., the defendant came home apparently intoxicated and "looking all wild." The defendant asked where the victim was and, upon being told, picked up a thick, heavy table leg and proceeded to the front room. From the kitchen the victim's friend could hear the defendant striking the victim with the table leg and demanding, "Where's my damn TV." The witness, going to his friend's assistance, observed the defendant standing over the victim in the front room. He saw the defendant strike at least two powerful blows and heard bones cracking. The defendant then left the house.

The victim's friend denied having an argument with the victim or beating him on the night on the attack.

The defendant's daughter testified that she arrived at the house immediately following the attack. She testified that before the victim was taken to the hospital the victim told her that the defendant and another man had beaten him with a pipe. The witness stated that the defendant's mother later told her that the defendant and the victim had fought over the stolen television and that the defendant had struck the victim "one or two times." Several minutes later she confronted her father who had returned and asked him why he had beaten the victim. The defendant answered, "It's a long story ***, and I don't really want to talk about it right now."

The neighbor testified that when she observed the victim being taken to the hospital, she asked the defendant what had happened to him. She claimed that the defendant told her that the victim had stolen his television set and that he was going to beat the victim until he paid for it. The witness stated that the defendant repeated this threat to her several days later.

The county coroner testified that the victim sustained lacerations about the left eye, forehead, and scalp, bruising of the abdomen, and defense related fractures of the left hand. The coroner further discovered an aneurysm at the base of the victim's brain which predated the time of the beating. The witness opined that the victim's death was caused by the rupturing of the aneurysm as a result of "multiple impacts to the head." The coroner indicated homicide as the manner of death.

The coroner admitted the possibility that the aneurysm could have burst spontaneously as a result of conditions unrelated to the attack, including an elevation of blood pressure. He testified that the aneurysm began leaking sometime between October 1 and October 3.

The defendant testified that on the night of the beating he heard the victim and his friend arguing about money. He saw the victim's friend beat the victim about the head with a beer bottle. The defendant claimed that he went to the victim's assistance and stopped the friend from further striking the victim. He said that he then went to sleep. When he awoke after a short time, his mother told him that the victim's friend had again attacked the victim and that the victim had been taken to the hospital.

The defendant testified that earlier that evening the victim complained about suffering from severe headaches. The defendant called for an ambulance but the victim refused treatment. The defendant denied having an argument with the victim concerning his missing television set and denied striking the victim with a table leg.

The defendant's mother essentially corroborated the defendant's testimony. She stated that the victim's friend beat the victim with a table leg and later bragged to her about his attack.

## II.

The defendant first argues that the trial court should have entered a "not guilty" verdict on the murder charge instead of continuing the trial on a reduced charge of involuntary manslaughter. He claims that involuntary manslaughter does not constitute a lesser included offense of murder and that consequently the trial court denied him a fair trial since he had no fair notice of the charges against him. We conclude otherwise.

We first note that in conjunction with the defendant's motion for acquittal at the close of the state's evidence, defense counsel requested that the trial court in the alternative consider a lesser charge. Defendant counsel raised no objection when the trial court amended the indictment to charge involuntary manslaughter. Generally, a defendant cannot complain when the trial court grants requested relief. Moreover, errors not brought to the trial court's attention by timely objection are generally waived. *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 260. However, we address the defendant's

assigned error since the claimed error affects substantial rights. Cf. Crim. R. 52(B) (plain error).

We conclude that in this case involuntary manslaughter does constitute a lesser included offense of murder. This court has previously held that involuntary manslaughter does constitute a lesser included offense or murder where the elements of the underlying offense are subsumed in murder. *State* v. *Brown* (Mar. 27, 1986), Cuyahoga App. No. 50402, unreported.

Here, the trial court charged the defendant with involuntary manslaughter under R.C. 2903.04(A). That section reads in relevant part:

> "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2903.04(A).

The trial court specified the underlying felony in this case as being felonious assault. Ohio's Revised Code defines felonious assault as follows:

> "No person shall knowingly:
> "(1) Cause serious physical harm to another;
> "(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code." R.C. 2903.11(A).

The trial court could not properly convict the defendant under R.C. 2903.11(A) (2). Clearly, felonious assault as defined under this section requires proof of an essential element not required for murder since murder may be accomplished without the use of a deadly weapon. Accordingly, involuntary manslaughter where the underlying offense is felonious assault under R.C. 2903.11(A) (2) cannot be a lesser included offense of murder.

However, the trial court could properly convict the defendant under R.C. 2903.11(A) (1). Where felonious assault under R.C. 2903.11(A) (1) is the underlying felony, involuntary manslaughter is a lesser included offense of murder since all of the elements of that felony are subsumed in murder. A conviction for murder requires proof that the offender (1) "purposely" caused the (2) "death" of another. R.C. 2903.02(A). A conviction for felonious assault under R.C. 2903.11(A) (1) requires proof

that a person (1) "knowingly" caused (2) "serious physical harm" to another.

Each of these elements are subsumed in the elements of murder by statutory definition. R.C. 2901.11 provides that proof that an individual acted "purposely" suffices to establish that an individual acted "knowingly". Further, R.C. 2901.01(E) (2) defines "serious physical harm" as including "[a]ny physical harm which carries a substantial risk of death". Accordingly, the elements of felonious assault under R.C. 2903.11(A) (1) are subsumed in the elements of murder. The trial court could properly convict the defendant of the specified involuntary manslaughter charge as a lesser included offense of murder.

We overrule the defendant's first assignment of error.

### III.

The defendant, in his second assignment of error, challenges the sufficiency of the evidence supporting his conviction for felonious assault.

Generally, the credibility of witnesses and the weight of the evidence are matters for the trier of fact. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230, paragraph one of the syllabus. Accordingly a reviewing court shall not reverse a criminal conviction which has support from competent, credible evidence. *State* v. *Eley* (1978), 56 Ohio St. 2d 169, syllabus.

In this case, competent, credible evidence establishes that the defendant knowingly caused serious physical harm to the victim. See R.C. 2903.11(A) (1) (felonious assault defined).

The victim's friend testified that he first heard and then observed the defendant mercilessly beat the victim with a thick table leg.

The coroner's testimony establishes that the defendant caused serious physical harm to the victim. Nothing in the record suggest that any of this evidence is fundamentally incompetent.

While the defendant denies that he attacked the victim, such credibility issues must be resolved by the trier of fact. *State* v. *DeHass, supra.*

We overrule the defendant's second assignment of error.

### IV.

The defendant complains in his remaining assignment of error that he was denied the effective assistance of counsel at trial.

In order to obtain a new trial for ineffective assistance of counsel, the defendant must show that his counsel deprived him of a fair trial. He must demonstrate that (1) his counsel's performance was seriously deficient, and (2) the result would probably have been different had his counsel performed competently. *Strickland* v. *Washington* (1984), 466 U.S. 668, 687; *State* v. *Post* (1987), 32 Ohio St. 3d 380, 388.,

In evaluating defense counsel's performance, a reviewing court initially presumes that duly licensed counsel performed competently. *Stave* v. *Lytle* (1976), 48 Ohio St. 2d 391, 397. Further, a reviewing court must accord deference to counsel's strategic choices from counsel's perspective then without the benefit of hindsight. *Strickland, supra,* at 689-690.

The defendant argues that his counsel failed to object to hearsay statements made by the defendants daughter at trial. The daughter recounted statements made by the victim to both the paramedics and to her identifying the defendant as his assailant.

While some of those statements may well have been inadmissible hearsay, the defendant cannot establish that the outcome of the trial would probably have been different but for those statements.

The state produced an eyewitness to the offense and further produced a witness who related the defendant's admissions to the crime. In light of this overwhelming evidence of guilt, those inadmissible hearsay statements could have no bearing on the outcome of trial.

The defendant in his *pro se* supplemental brief, claims that defense counsel failed to competently cross-examine prosecution witnesses at trial. Our review of the record fails to disclose any serious deficiencies in this respect.

Accordingly, we overrule the defendant's third assignment of error and affirm his conviction.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

PATTON, C.J., and NAHRA, J., Concur.