Appellant, Thomas A. Pasqualone, appeals his conviction and sentence entered by the Ashtabula County Court of Common Pleas for aggravated vehicular homicide. Appellee, the state of Ohio, has filed an answer brief. For the reasons which follow, we affirm the judgment of the trial court.
On November 5, 1996, appellant was indicted by the Ashtabula County Grand Jury on one count of aggravated vehicular homicide in violation of R.C. 2903.06(A). Appellant was accused of recklessly causing the death of twenty-eight-year-old Denis C. McMillion ("the victim") while appellant was operating a motmr vehicle under the influence of alcohol on October 15, 1996. He pled not guilty and was released on a $25,000 personal recognizance bond. Approximately one month later, appellant was arrested for driving while under the influence of alcohol after the police responded to a report of a non-injury crash between appellant's vehicle and another vehicle. Appellant's bond was thereafter increased to $50,000.[1]
At trial, many of the relevant facts were uncontested. There was no question that appellant was involved in a collision with the victim on October 15, 1996 between 11:00 and 11:30 p.m. in Ashtabula County. Appellant was proceeding northbound in a pick-up truck on Route 534 at a rate of speed in excess of fifty m.p.h. in a forty-five m.p.h. zone. The victim was also traveling northbound on Route 534 on a bicycle. Appellant came upon a curve in the road and struck the victim from the rear. A factual issue existed as to whether the victim was riding on the berm of the road or in the center of appellant's lane.
It was established that the area was dark and that the victim was wearing dark clothing. Although the victim's bicycle had some reflective material on the pedals, it did not have a tail light. The victim's body flew up onto the windshield of appellant's truck and then landed some distance away in the middle of the road. Appellant swerved to the left and went off of the road, crashing into a nearby house. Immediately thereafter, another vehicle also traveling northbound on Route 534 ran over the body.
Despite these conceded facts, there were several key factual disputes at trial. First, although appellant admitted that he had consumed "a number of beers" earlier in the evening at three local bars, and that he was "under the influence of alcohol" at the time of the collision, he denied that his driving ability was impaired by the amount of alcohol he had consumed. In other words, he denied that any impairment was the proximate cause of the collision.
According to appellant, the collision was unavoidable because the victim was traveling at night in the middle of the northbound lane, in dark clothing and without the required tail light. One of the defense witnesses testified that she nearly hit a bike rider wearing dark clothing when she was driving on the same day in the same area around the same time that appellant hit the victim. According to this witness, the bike rider was riding erratically on and off of the road, as if the rider was playing "chicken."[2] Nevertheless, this witness could not actually identify the bike rider she saw as the victim.
According to the state, the victim was not traveling in the middle of the northbound lane at the time of the collision, but was traveling off of the main road, on the right-hand berm of the lane. The state also asserted that appellant was heavily intoxicated, that his blood alcohol content was above the legal limit at the time of the collision and that appellant began traveling on the right-hand berm of the road because he was unable to negotiate the curve in his impaired state. The state called Trooper Jerry DuFour ("Trooper DuFour"), an accident reconstructionist expert, to establish that the initial point of impact occurred three and a half feet to the right of the main road, on the right-hand berm of the road.
To establish appellant's intoxication, the state presented several eyewitnesses who spoke with and observed appellant immediately after the collision. These witnesses were the husband and wife into whose rental home appellant crashed and two paramedics who arrived at the scene. The cumulative effect of their compelling testimony established that appellant appeared to be heavily intoxicated.[3]
In addition to these four witnesses, the state called an investigator for the coroner's office and the arresting officer, Trooper Paul Brunsman ("Trooper Brunsman") to testify as to appellant's high level of intoxication. In particular, the arresting officer testified that appellant completely failed a routine field sobriety test, the horizontal gaze nystagmus test; that appellant fell asleep in the back of his patrol car and that appellant urinated in the back of his patrol car.
The state further presented Dr. Alfred E. Staubus ("Dr. Staubus"), a professor in pharmaceutical chemistry, who analyzed the results of a blood-alcohol test taken at the hospital where appellant received treatment for minor injuries and a possible concussion following the collision. The blood sample was taken approximately five hours after the collision and it indicated that appellant had a blood-alcohol content of .210 at the time of the test. At trial, Dr. Staubus used this reading to opine that appellant had a blood-alcohol content of anywhere from .143 to .314 above the legal limit at the time of the collision.
There was also some dispute at trial as to whether the victim died from injuries incurred as a result of the impact with appellant's truck, or whether the victim died from injuries which occurred when the second car ran over the victim's body. According to the Ashtabula County Coroner, the victim sustained fatal head injuries when he fell to the ground following the impact with appellant's truck.[4] Thus, the state contended that the victim was already dead at the point when the second car arrived on the scene.
The jury found appellant guilty as charged and also found that he was under the influence of alcohol at the time of the collision. The trial court sentenced appellant to a definite term of imprisonment of five years, with credit for time served. Appellant's driver's license was permanently revoked.
Although appellant initially perfected a timely appeal of his conviction and sentence through counsel, that appeal was dismissed for want of prosecution. We subsequently granted an App. R. 26(B) application for reopening on the grounds of ineffective assistance of appellate counsel and appointed new counsel to represent appellant. Appellant now asserts that the outcome of his appeal would have been different and, thus, that he is entitled to a new trial, if the following assignments of error had been raised by his appellate counsel:
 "[1.] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION, TO THE PREJUDICE OF THE APPELLANT, BY OVERRULING THE APPELLANT'S MOTION FOR FUNDS TO HIRE AN EXPERT WITNESS.
 "[2.] THE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS PURSUANT TO THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I, OF THE CONSTITUTION OF THE UNITED STATES [sic].
 "[3.] THE TRIAL [sic] ERRED, AND ABUSED ITS DISCRETION, BY ADMITTING THE APPELLANT'S BLOOD-ALCOHOL INTO EVIDENCE.
 "[4.] THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
In the first assignment of error, appellant argues that the trial court abused its discretion when it denied appellant's motion for the appointment of experts at state expense to assist him in reconstructing the events of the collision. This motion was filed on March 4, 1997, approximately one week before trial. In the motion, appellant asked for the appointment of an expert to assist in reconstructing the physical layout of the collision site and the manner in which the collision occurred. Appellant also sought expert assistance in establishing the cause of death. Appellant did not specifically request an expert to assist in evaluating appellant's blood-alcohol content at the time of the collision; however, appellant alleges in the second assignment of error that his trial counsel was ineffective for failing to request a blood-alcohol expert. The trial court denied the motion on March 7, 1997, and appellant orally renewed his objection on the matter at the commencement of trial.
According to appellant, he did not receive a fair trial because he was unable to present evidence to contradict the various state experts who testified at trial and because trial counsel was unable to perform an adequate cross-examination of the state's expert witnesses without the assistance of its own experts. Specifically, appellant refers to the state's accident reconstructionist expert, Trooper DuFour; the state's blood-alcohol test result expert, Dr. Staubus; and the Ashtabula County Coroner who testified as to the cause of death, Dr. Robert A. Malinowski. Appellant also refers to Trooper Brunsman as one of the state's accident reconstructionist experts and James Lewis, an investigator for the coroner's office. However, the latter two were not qualified as experts.
We note at the outset that the trial court did not deny appellant's motion because the trial court failed to recognize that experts were necessary to prepare the defense, as appellant implies in his appellate brief. Instead, the trial court denied the motion because it did not find appellant to be indigent. In the judgment entry denying appellant's motion, the trial court stated:
 "Although the Defendant is represented by retained counsel, he now claims that he is rendered indigent because he is unable to post bond and therefore could not continue with his previous employment. The Defendant has not requested court appointed counsel. Under the circumstances, it would be a dangerous precedent, and one fraught with potential for abuse, if Defendants were able to retain private counsel of their choice, yet require the tax payers to fund the expenses of expert witnesses in criminal cases. If the Defendant is truly indigent and is represented by court appointed counsel, considerations of due process might require the Court to grant reasonable requests for the appointment of expert witnesses to be paid from the public treasury. However, where the Defendant is able to retain counsel, it does not seem unfair to require him to also pay other costs associated with the defense."
The determination of whether a criminal defendant is indigent and, thus, in need of appointed counsel or other state-funded assistance, is a matter within the sound discretion of the trial court. See State v. Weaver (1988), 38 Ohio St.3d 160,161. The determination of the trial court in this regard will not be reversed on appeal absent an abuse of discretion. Id.
The term "abuse of discretion" implies more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151, 157.
To a certain extent, we agree with appellant that indigency is not an absolute concept. It is entirely conceivable that a defendant may be indigent for one purpose, but not for another. For example, a defendant's resources may be drained by the expenditure of obtaining private counsel. Thus, while a defendant can afford private counsel, he or she may not be able to afford other costs of the case such as an investigator or expert witnesses. To the contrary, a defendant may not be able to retain private counsel but still be able to afford the cost of an expert witness or other costs.
Nevertheless, although we disagree with the trial court's reasoning, we cannot say that the court abused its discretion in finding that appellant was not indigent because appellant failed to present sufficient evidence to the court to persuade it that appellant was in fact indigent or indigent to the level where he was unable to afford the cost of expert witnesses. Specifically, appellant did not properly support his claim of indigency with a financial disclosure statement or other information sufficient to address the issue. Cf.Weaver. See, also, R.C. 120.05; 120.15(D); and Ohio Adm. Code120-1-03.
Providing a financial statement to the court is critical because it gives the court the required information on the various factors the court must take into consideration when making an indigency determination. See Ohio Adm. Code120-1-03(A).[5] Without this information, the court is unable to determine whether appellant had any assets which could have been used to pay for expert witnesses, irrespective of the fact that he was no longer working.[6] Finally, even if counsel was ineffective in failing to provide more information, the record does not affirmatively show that appellant would have been eligible for some sort of indigency classification.
Given these factors, we cannot say that the trial court abused its discretion when it found that appellant had not established either his indigency or degree of indigency. Appellant's first assignment of error is without merit.
In his second assignment of error, appellant argues that he received ineffective assistance of counsel at trial. In order to reverse a conviction on the grounds of ineffective assistance of counsel, appellant must prove both prongs of the two-prong test first set forth by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668.[7]
Under the first prong of the test, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by theSixth Amendment. Strickland at 687. Second, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Id. Prejudice is established when the defendant demonstrates that there is a reasonable probability that the outcome of the trial would have been different, absent the complained of errors. Bradley at 142-143, quoting Strickland at 695-696.
According to appellant, he was prejudiced by his trial counsel's deficient performance in two principal ways. First, appellant argues that his trial counsel was ineffective because counsel permitted one of the state's witnesses, Trooper Brunsman, to testify in areas that were well beyond the trooper's expertise. The complained of testimony occurred when Trooper Brunsman testified that the collision occurred on the berm of the road rather than in the middle of the northbound lane.[8]
Initially, we note that the state did not move the court to accept Trooper Brunsman as an expert in accident reconstruction because it brought forward Trooper DuFour as its expert in accident reconstruction. Nevertheless, even if it were true that counsel should have objected to Trooper Brunsman's testimony, appellant has failed to establish how he was prejudiced thereby.
It was quite clear at trial that Trooper DuFour was the established expert on accident reconstruction and that it was Trooper DuFour who testified that the evidence revealed that the initial point of impact occurred on the berm of the road. Thus, that small portion of Trooper Brunsman's testimony which may have been improper was merely cumulative of the same; and we cannot say there is a reasonable probability that the outcome of the trial would have been different absent the admission of the testimony at issue from Trooper Brunsman.
Second, appellant alleges that his defense counsel was ineffective because he inexplicably stipulated to the admission into evidence of the results of the blood-alcohol test given to appellant when he was admitted to the hospital for treatment following the collision. Appellant contends that, had the issue been properly preserved for appeal, we would have reversed the trial court's decision to admit the document and the attending expert testimony on the authority of this court's decision inState v. Lampman (1992), 82 Ohio App.3d 515. We disagree.
It is true that counsel filed a motion to suppress the results of the blood-alcohol test, in part, on the grounds that the admission of the test violated the patient/physician privilege. This motion was ultimately denied. Although appellant first renewed his objection to the admission of the test results and to Dr. Staubus' testimony based on those results at the time of trial, counsel thereafter stipulated to the admission of the results into evidence.
Nevertheless, we do not believe that trial counsel was ineffective for stipulating to the admission of the test results because our holding in Lampman has been effectively overruled by subsequent amendments to the privilege statute. Briefly, in Lampman we held that the trial court erred by admitting into evidence, over defense objections, privileged testimony regarding the results of a blood-alcohol test performed at the direction of the defendant's physician. Finding the admission prejudicial, we reversed the defendant's convictions for vehicular homicide and driving while under the influence of alcohol and remanded the matter for further proceedings.
However, R.C. 2317.02(B) has since been amended as follows:
 "(B)(1) * * * The testimonial privilege under this division does not apply, and a physician or dentist may testify or may be compelled to testify in any of the following circumstances:
" * * *
 "(b) In any criminal action concerning any test or the results of any test that determines the presence or concentration of alcohol, a drug of abuse, or alcohol and a drug of abuse in the patient's blood, breath, urine, or other bodily substance at any time relevant to the criminal offense in question."
Moreover, the blood-alcohol test results obtained in the case at bar were obtained in accordance with pertinent provisions of R.C. 2317.02(B)(2)(a).[9] Consequently, we cannot say that trial counsel was ineffective because he failed to preserve a losing argument for appellate review.[10]
Finally, appellant argues that counsel was ineffective because he failed to request expressly the appointment of an expert to testify in regards to the blood-alcohol test results. However, because we have determined that the trial court properly denied the motion for experts on the grounds that appellant failed to establish his indigency, we fail to see how the claimed error prejudiced appellant. The second assignment of error is not well-taken.
In the third assignment of error, appellant argues in the alternative that the trial court committed plain error by admitting the results of the blood-alcohol test into evidence. However, as we indicated in our disposition of the second assignment of error, this argument is without merit. Appellant's third assignment of error is not well-taken. In the fourth and final assignment of error, appellant contends that in the event that this court finds that the trial court's failure to provide appellant with expert witnesses at state expense was somehow merely harmless error, appellant's conviction is against the manifest weight of the evidence. However, as we found no error in regards to the first assignment of error, this assignment of error has been rendered moot. Appellant's fourth assignment of error is not well-taken.
In light of the foregoing analysis, none of the assignments of error are well-taken. As a result, appellant has failed to establish that he was prejudiced by the ineffective assistance of appellate counsel or that a new trial is warranted. It is the judgment and order of this court that the judgment of the trial court is affirmed.
 ----------------------------------- PRESIDING JUDGE JUDITH A. CHRISTLEY
NADER, J., CACIOPPO, J., Ret., Ninth Appellate District, sitting by assignment, concur.
[1] It appears from the record that appellant was unable to post the increased bond, and, thus, was incarcerated during the pendency of the trial.
[2] Notably, however, an autopsy revealed that the victim was not under the influence of any alcohol or drugs at the time of the collision.
[3] According to these four witnesses, appellant had an odor of alcohol about his person; he vomited; he staggered when he walked; his eyes were bloodshot; and his speech was slurred.
[4] The coroner testified that the victim's head sustained blunt impacts to the back and side that fractured the skull and caused instantaneous death. This was consistent with the state's evidence that the victim's body struck the ground after the impact with appellant's truck, leaving marks of blood and brain matter on the road. There were no injuries to the head to suggest that it had been run over by a motor vehicle such as the second car that arrived at the scene. Rather, the evidence showed that the trunk of the victim's body suffered post-mortem injuries. Post-mortem injuries are identified by a lack of bleeding because the heart has already stopped pumping blood throughout the body. Thus, the state argued that the second motor vehicle caused the post-mortem injuries to the trunk of the victim while appellant caused the first fatal head injuries when the body flew into the air and then landed on the road following the impact with appellant's truck.
[5] This section, entitled "Standards of Indigency" reads in part: "(A) * * * [T]he criteria for determining indigency shall include: ownership and ready availability of real or personal property; all household income, inheritance, expectancies and other assets; number and age of dependents; outstanding debts, obligations and liabilities; and any other relevant considerations."
[6] Here, it appears that appellant was qualified as indigent at his initial appearance and the Ashtabula County Public Defender's Office was appointed to represent appellant. Thereafter, the Public Defender withdrew, and appellant retained private counsel without attempting to have other counsel appointed at public expense. However, the record does not contain any financial statement or other comparable information submitted in regard to this first appointment.
[7] The Strickland test has been followed and applied by the Supreme Court of Ohio and this court. State v. Post (1987),32 Ohio St.3d 380; State v. Bradley (1989), 42 Ohio St.3d 136;State v. DiMeolo (Sept. 30, 1992), Ashtabula App. No. 91-A-1680, unreported, 1992 Ohio App. LEXIS 5045.
[8] Briefly, Trooper Brunsman testified about his observations when he arrived at the scene of the collision, e.g., (1) the physical evidence he observed at the scene such as tire and blood marks and what that evidence revealed about how the collision occurred; (2) how he assisted Trooper DuFour in taking measurements; and finally, (3) his interaction with and observations of appellant.
[9] This section reads in part:
 "If any law enforcement officer submits a written statement to a health care provider that states that an official criminal investigation has begun regarding a specified person or that a criminal action or proceeding has been commenced against a specified person, that requests the provider to supply to the officer copies of any records the provider possesses that pertain to any test or the results of any test administered to the specified person to determine the presence or concentration of alcohol, a drug of abuse, or alcohol and a drug of abuse in the person's blood, breath, or urine at any time relevant to the criminal offense in question, and that conforms to section 2317.022 of the Revised Code, the provider, except to the extent specifically prohibited by any law of this state or of the United States, shall supply to the officer a copy of any of the requested records the provider possesses."
[10] Appellant provided this court with notice of additional authority at oral argument in regards to this issue, citing the case of State v. Pearson (1996), 114 Ohio App.3d 153, 165. InPearson, the prosecuting attorney moved for a court order requiring the defendant to submit to a blood test as he was a suspect in a rape case. The trial court granted the motion and issued the requested order without a warrant and without any facts before it specifying the criminal activity allegedly involving the defendant. The Third Appellate District held that the results of this blood test should have been suppressed on the grounds that it constituted a warrantless search of the defendant that was conducted pursuant to a court order without probable cause. However, the instant case is distinguishable from Pearson on the facts, as Pearson is