OPINION
On May 14, 1997, the Guernsey County Grand Jury indicted appellant, Jerry R. Francis, Jr., on four counts of rape in violation of R.C. 2907.02 and four counts of gross sexual imposition in violation of R.C. 2907.05. Said charges arose from incidents involving appellant's son (hereinafter "the victim") that took place from August 1993 to February 20, 1997. A bench trial commenced on April 15, 1998. The trial court found appellant guilty as charged. By judgment entry filed June 1, 1998, the trial court sentenced appellant to a total aggregate sentence of twenty-two years in prison. The trial court also classified appellant as a sexual predator. On June 11, 1998, the trial court filed a nunc pro tunc judgment entry modifying the sentence as to "consecutive' and `concurrent." Appellant was still ordered to serve an aggregate sentence of twenty-two years in prison. On December 21, 1998, appellant filed a petition for postconviction relief claiming defense counsel was ineffective. Attached to the petition were thirteen affidavits from family members, friends and employers claiming they had information relevant to appellant's case but were never called to testify. By entry filed June 4, 1999, the trial court denied appellant's petition for postconviction relief finding the outcome of the trial would not have been different even if the thirteen witnesses had testified. The trial court included findings of fact and conclusions of law within said entry. An evidentiary hearing was not held. Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I THE TRIAL COURT ERRED WHEN IT DENIED MR. FRANCIS'S POSTCONVICTION PETITION WITHOUT HOLDING AN EVIDENTIARY HEARING THEREBY VIOLATING MR. FRANCIS'S RIGHTS UNDER THE FIFTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.
 I
Appellant claims the trial court erred in not holding an evidentiary hearing on his petition for postconviction relief. We agree in part. R.C. 2953.21 governs petitions for postconviction relief. Subsection (C) states as follows: (C) The court shall consider a petition that is timely filed under division (A)(2) of this section even if a direct appeal of the judgment is pending. Before granting a hearing, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * * If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.
In State v. Calhoun (1999), 86 Ohio St.3d 279, the Supreme Court of Ohio recently reviewed the role of the supporting affidavits in determining whether there is substantial grounds for relief: In reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact.
Calhoun at paragraph one of the syllabus.
The trial court may, under appropriate circumstances in postconviction relief proceedings, deem affidavit testimony to lack credibility without first observing or examining the affiant. That conclusion is supported by common sense, the interests of eliminating delay and unnecessary expense, and furthering the expeditious administration of justice.
Calhoun at 284.
In determining the credibility of supporting affidavits in postconviction relief proceedings, we adopt the reasoning of the First Appellate District in State v. Moore (1994), 99 Ohio App.3d 748,651 N.E.2d 1319. The court, in Moore, cited Sumner [v. Mata (1981), 449 U.S. 539], and suggested that a trial court, in assessing the credibility of affidavit testimony in so-called paper hearings, should consider all relevant factors. Id. at 754,651 N.E.2d at 1323. Among those factors are (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony. Id. at 754-756,651 N.E.2d at 1323-1324.
Calhoun at 284-285.
In his petition for postconviction relief filed December 21, 1998, appellant claimed ineffective assistance of counsel as his substantive ground for relief. In support, appellant attached thirteen affidavits of family members, friends and employers claiming they had information relevant to appellant's case but were never called to testify. The thirteen affidavits were submitted by Leslie Francis (appellant's wife and the victim's mother), Shawn Francis (appellant's twelve year old son and the victim's brother), Christopher Francis (appellant's fourteen year old son and the victim's brother), Jamie Morris (sixteen year old family friend), Sheree Davidson (adult family friend), Richard and Danielle Rings (adult family friends), Charlene Hamner (adult family friend), Angela Hamner (sixteen year old family friend), John Hamner (fourteen year old family friend and friend of the victim), Bill Yontz (adult family friend and appellant's previous employer), Al Holeton (adult family friend and appellant's previous employer), and Carol Holeton (adult family friend). In arguing the right to an evidentiary hearing in his petition for postconviction relief, appellant quoted the following from State v. Aeh (December 11, 1997), Franklin App. No. 97APA05-601, unreported: `[when] a postconviction relief petitioner alleges ineffective assistance of counsel through affidavits naming uncalled witnesses whose testimony may have demonstrated evidence significant to the defendant, an evidentiary hearing should be held.'
By entry filed December 22, 1998, the trial court set the matter for "hearing without oral argument, to be based upon the pleadings then before the Court" for April 20, 1999. By entry filed June 4, 1999, the trial court addressed the affidavits, the record of the case and the verdict as follows: 2) The Court finds the Affidavits attached to the Defendant's Petition all allege reasons why the victim, Jerry R. Francis, III (the son of the Defendant, Jerry R. Francis, Jr.) would have had reason to lie. The Court has read and reviewed each Affidavit in light of the trial testimony in this case.
4) The Court finds from the Affidavits and review of the trial transcripts, no substantive ground for relief, through the Affidavits naming uncalled witnesses, as the Court does not find the testimony demonstrates any evidence significant to the outcome of the trial. The Court finds no Affidavit which would refute the physical evidence found by Dr. Bocka (sic) which is indicative of repeated abuse.
5) The Court finds the weight to be given the testimony of the victim, when compared to the findings at the emergency room at the hospital, to be unrefuted.
7) The Court finds that the credibility of the victim/Jerry Francis, III was determined by the finder of fact at trial after cross-examination of Defendant's attorney which raised many of the issues that are set forth in the Affidavits.
8) The Court finds the essential facts of Jerry Francis, III's story never changed as to 1) the principal; 2) Caseworker Laura Harris; 3) Investigating Officer Robert Edwards; and 4) the State's expert, Ms. King. The Court further finds the most weight was given by the trier of fact to the fact that the emergency room doctor testified as to his findings on the very day the child/victim had told the story and was taken to the emergency room — a fact which is not refuted by any affidavit before the Court.
9) The Court further finds that the presentence investigation disclosed that the Defendant, Jerry Francis, Jr., had a prior felony record — which would be reason for counsel's decision not to place him on the witness stand and expose the Defendant to cross-examination as to the sexual allegations that had been made against him by his son.
The standard for ineffective assistance of counsel is set forth in State v. Bradley (1989), 42 Ohio St.3d 136, 142, certiorari denied497 U.S. 1011. Appellant must establish two criteria: 1) [C]ounsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition.
2) [P]rejudice arises from counsel's performance.
Appellant must further establish ". . . but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland v. Washington (1984), 466 U.S. 668,696. From our review of the thirteen affidavits, we find they focus on the character of appellant, the character and sexual behavior of the victim, and the victim's motive in fabricating the accusations. CHARACTER OF APPELLANT Appellant did not testify at trial therefore, any evidence of his "good character" would not have been admissible under Evid.R. 608(A) which states as follows: The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
As noted by the trial court, appellant had a previous felony conviction that was disclosed via the presentence investigation. If appellant had testified, such information would have been admissible under Evid.R. 609 to attack appellant's credibility. In weighing the value of character witnesses against the admission of prior criminal acts, we cannot find the exclusion of the character witnesses violated the right to effective assistance of counsel. Appellate courts must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." State v. Post (1987),32 Ohio St.3d 380, 388.
CHARACTER OF THE VICTIM Numerous affidavits described the victim as a liar, manipulator, thief and "pot" user. Some also stated the victim was cruel to animals. The affidavits of the victim's brothers, Shawn and Christopher Francis, and the affidavits of Angela Hamner and Danielle Rings addressed the victim's sexual behavior with himself and others. During the trial on cross-examination, the victim admitted to lying to his parents, mistreating animals and mouthing off to teachers. T. at 185-186, 194-195. Under Evid.R. 608(B), specific instances of the conduct of a witness may not to be proved by extrinsic evidence: Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
The exception built into said rule is left to the discretion of the trial court. Because the victim admitted to lying and mistreating animals on cross-examination, there would have been no purpose to permit the extrinsic evidence under the exception. Some of the affidavits allege specific instances of sexual activity by the victim with a girlfriend as well as self digital penetration of his anus. Pursuant to R.C. 2907.02(D), the admission of evidence relating to a victim's sexual activity is generally prohibited: Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.
Appellant argues the evidence of self digital anal penetration should have been presented because it would have explained or provided an alternative reason for the medical findings. Dr. Boca, the physician who examined appellant in the emergency room, testified to his objective medical findings after examining the victim. Dr. Boca stated the victim had a "remarkedly decreased" sphincter muscle that was "looser than I would expect from a child or a young adult" and a "very tender prostrate." T. at 30. Dr. Boca testified the condition of the victim's anus and sphincter muscle was consistent with "an outside object going inside." T. at 33. Dr. Boca opined the physical findings were consistent with the sexual abuse described in the medical history. T. at 34. Dr. Boca further testified to the following: A. To get a prostate to be in flamed (sic) especially from trauma coming from the outside in requires usually repeated the same way that the hand doesn't usually get irritated if you rub it once but rubbing it several times you then start getting inflammation.
 Q. And was that condition of Jerry Ray Francis', III prostrate as you observed it on February 20, 1997?
A. That is correct. It was in flamed (sic).
 Q. Can you tell us as to the child your finding that the child had a weak sphincter how that was consistent with a history that the child gave to you?
 A. I would not expect a 14 year old to have any looseness to the sphincter and his was very loose which was consistent with something repeatedly stretching the sphincter muscle.
 Q. Doctor, was the child's physical condition consistent with having been repeatedly anally penetrated?
A. Yes, sir.
Q. Can you tell us how it was so consistent?
 A. By the looseness of the muscle and by the bruising and by the prostate being inflamed.
 Q. Doctor, do you have an opinion whether Jerry Ray Francis, III was a victim of sexual abuse?
 A. His history and his physical examination are consistent with that.
T. at 34-35.
On cross-examination, defense counsel attempted to create an alternative cause for the damaged sphincter muscle:
 Q. Doctor, are there other means other than by rectal penetration by a penis that the muscle tone that you spoke of could be soft beyond that which you would expect?
 A. Anything that's large that keeps getting repeatedly passed through there at a time when the muscle is not relaxing like when you're having a bowel movement then the reflexes set it up to relax.
Q. Such as a finger perhaps?
 A. A finger is consistent with that. It would have to be a large finger obviously not a —
 Q. Now, I'm going to ask you to make an assumption at this point based on your experience and the examination that you've done bearing in mind what you've said you expect to find in the course of such an examination. You just told me that it's possible for muscle tone to be significantly softened by repeated insertion of a finger. Would that same type of insertion, doctor, also cause or perhaps exacerbate the protatitis you testified you found in this case or cause sore or enlarged prostate in a child the age of Jerry Ray Francis, III?
 A. It would have to be with someone with a large enough finger and knowing what they're doing because there are certain tricks that — tricks that we're taught to be able to get to the proper feel and to get deep enough.
* * *
 Q. Just to make sure that there is more than one way that this bruising could have occurred, it could have also been caused by manipulation of the rectal — of the introitus and the sphincter by somebody's finger, is that correct?
 A. It would have to have a significant force plus also with it being in the front it would have to be coming from behind and aiming forward. It would be hard to do. You would have to have your finger aimed directly front in order to be coming from the front.
 Q. But it is a reasonable alternative, is it not? It could have been something else other than penile penetration of the sphincter and the anus?
 A. It had to have been from some force from a hard object.
* * *
 THE COURT: Yes. You may answer the question and explain your answer is proper. Could this have been caused by a finger or other object. That's the question.
 A. Whatever this trauma was consistent with an object that was at least the length of a finger but most likely longer in order to get into the deeper area. It would need to be, I can't give you the exact amount, but probably the equivalent of three or four of his fingers of whatever this child's size was width in order to be able to stretch it to that degree. If that helps to clarify things?
T. at 45-46, 54 and 56, respectively.
On redirect, Doctor Boca opined the physical findings were more consistent with something "greater than just a single finger's worth." T. at 59. Clearly defense counsel attempted to argue an alternative cause for the physical findings and the doctor discounted the theory. To pursue such a theory in light of its questionable value was clearly within the realm of trial strategy. The trial court was correct in finding no ineffective assistance of trial counsel for failing to present the character witnesses and the evidence as to self digital penetration. MOTIVE TO FABRICATE The last issue developed by the affidavits is the proposed testimony that the victim had made up the claim of sexual abuse to retaliate for being grounded by his father. The victim denied this motive. T. at 190, 195-196. The affidavit of Leslie Francis opines her son's accusations were the immediate result of his being grounded by appellant. The affidavits of Shawn and Christopher Francis state their brother had told them "he was going to get back at my dad" for grounding him and breaking up his relationship with his girlfriend. The victim then made the accusations the following day. The affidavit of Jamie Morris, the victim's sixteen year old friend, states the victim "told me he was lying about his dad, that his dad didn't do any of the things he accused him of." The affidavit of Richard Rings states the victim "told me that he was going to get back at his father for what his father did to him. I knew from the tone of his voice that he was angry and upset with his father." The affidavit of Danielle Rings states the victim "was very angry and told us that he would get back at his father no matter what happened." The next day, the victim made the accusations against his father. Although defense counsel broached the issue at trial, no other evidence was presented on this retaliation theory. Evid.R. 613(B) permits impeachment of self-contradictory statements and the use of extrinsic evidence to so impeach: Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:
 (1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
(2) The subject matter of the statement is one of the following:
 (a) A fact that is of consequence to the determination of the action other than the credibility of a witness;
 (b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(B) or 706;
 (c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.
On this very limited issue, we find the trial court should have afforded appellant a hearing to properly develop the "direct testimony" of retaliation and to qualify it under Evid.R. 613(B). This case is reversed and remanded to the trial court for a hearing for the limited purpose of review under Evid.R. 613(B). The sole assignment of error is granted.
The judgment of the Court of Common Pleas of Guernsey County, Ohio is hereby reversed and remanded.
EDWARDS, J. concur. HOFFMAN, P.J., concurs in part; dissents in part.