OPINION *Page 2 
{¶ 1} On November 9, 2007, a complaint was filed in the juvenile division against appellant, Andrew Ray, born April 5, 1979, alleging him to have violated R.C. 2919.24, contributing to the unruliness of a child, by engaging in sexual contact with a female under the age of eighteen.
 {¶ 2} A jury trial commenced on April 9, 2008. The jury found appellant guilty as charged. By judgment entry filed July 29, 2008, the trial court sentenced appellant to one hundred eighty days in jail.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE PROSECUTION ENGAGED IN MISCONDUCT THAT DEPRIVED THE APPELLANT OF HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL."
 II {¶ 5} "APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHICH DEPRIVED HIM OF HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL."
 I {¶ 6} Appellant claims he was denied a fair trial because of prosecutorial misconduct. We disagree.
 {¶ 7} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), *Page 3 51 Ohio St.3d 160, certiorari denied (1990), 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. Darden v.Wainwright (1986), 477 U.S. 168.
 {¶ 8} Because objections were not made to the claimed errors, we must review this assignment under the plain error standard of review. An error not raised in the trial court must be plain error for an appellate court to reverse. State v. Long (1978), 53 Ohio St.2d 91; Crim. R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Long. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus.
 {¶ 9} Appellant argues the prosecutor purposely mischaracterized the testimony of the victim, T.D. During the time of the incident, T.D. was a resident of a rehabilitation facility. T. at 257. Appellant was a staff member at the facility. T. at 259-260. On the day in question, T.D., appellant, and others went hiking. T. at 260. They stopped to swim in "a little stream, a river." T. at 262. T.D. testified while swimming, appellant "tried grabbing me in my private area," and "[h]e reached in through the top of my underwear and grabbed * * * my clitoris." T. at 265, 277. The prosecutor then asked the following:
 {¶ 10} "Q. Okay. Did you ever tell him that him putting his hand in your underwear and rubbing your clitoris was okay?
 {¶ 11} "A. No.
 {¶ 12} "Q. Did you ever give him permission to do that? *Page 4 
 {¶ 13} "A. No." T. at 293-294.
 {¶ 14} During closing argument, the prosecutor stated, "he reaches into her underwear and he rubs her clitoris, he rubs that area of her privates," and "he put his hands in her underwear and rubbed her clitoris." T. at 399, 408. The prosecutor also characterized appellant's conduct as putting his hands in T.D.'s underwear and touching her. T. at 402.
 {¶ 15} Appellant argues the prosecutor mischaracterized the testimony, and T.D.'s testimony was inconsistent i.e., "tried grabbing me" and "grabbed my clitoris."
 {¶ 16} The theory of the state's case was that appellant's conduct caused T.D. to run away from the rehabilitation facility, thereby causing her to become unruly. T. at 437.
 {¶ 17} The conduct described, whether it was "grab," "grabbing" or "rubbing," was the act of reaching into T.D.'s underwear and touching her clitoris. We find the use of the word "rub" vis-à-vis "grab" does not rise to the level of plain error. The issue was whether the touching of T.D. constituted sexual contact. "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 29007.01(B). We find the "grabbing" or "touching" of a woman's clitoris to be within this definition. Therefore, the use of the word "rubbing" in closing argument is not plain error. In addition, on re-direct, T.D. indicated "yes" when asked if appellant had rubbed her. T. at 315.
 {¶ 18} Appellant also argues in closing argument, the prosecutor misstated the testimony of Josh Anderson, and incorrectly implied that appellant planned the incident *Page 5 
and staged the event. T. at 404-405, 407. After reviewing the complained of statements, we find they are assumptions that could have logically been implied from the evidence. Appellant was the group's leader, he planned the course of activities, he suggested the girls remove their jeans while swimming, and he grabbed T.D.'s thighs and butt during a game of "chicken" while swimming. T. at 263.
 {¶ 19} Lastly, appellant argues the prosecutor improperly argued that T.D. was a credible witness because she appeared at trial:
 {¶ 20} "How do we know that T***, who has come here to testify before you today should be believed? Credibility, remember we talked about that in Voir Dire. You folks are going to be the judge of credibility. You're going to use the same tools that you use in your everyday lives to decide whether someone is telling the truth and what weight to give their testimony. How did T*** D*** come in? She came in to testify, she was open, she was tearful. She didn't waiver, I don't believe, in her testimony. What does she have to lose by coming in and telling you what happened? She's finished Foundations. She got dropped, her levels for running away. She got her levels dropped for not — for not behaving while she was at Foundations after she got returned, and she pulled herself up, and she did what she needed to do, and she got out of Foundations, so what does she have to lose by coming here today? It's just as easy for her not to come at all and be done with the whole thing, but what did T*** do? She came here, ladies and gentlemen, and she relived it all over again. She told you it wasn't easy to sit here and tell you about one of the worst sexual experiences she ever had." T. at 401-402.
 {¶ 21} Appellant argues the prosecutor's assertions were not true because T.D. failed to appear at the first scheduled trial and as a result, was arrested. Defense *Page 6 
counsel argued this issue to the trial court, and requested a specific instruction on the fact that T.D. failed to appear. T. at 409-410. We note this fact was not brought out in the evidence, but it is conceded that it did occur and it is demonstrated by the record. The trial court refused to give the requested instruction (T. at 411), but permitted defense counsel to state the following during closing argument:
 {¶ 22} "Now, Ms. Kellogg brought up the fact that what did T*** have to lose by coming here to testify, and I'll tell you. Being under subpoena and not showing up when you're ordered to by the Court places you in contempt of Court. That's what she had to lose, okay? Sure, she came and gave her story, but she did have something to lose." T. at 418.
 {¶ 23} We note T.D. testified extensively about reporting the incident and the deaf ear law enforcement gave her. T. at 281-282, 283. In addition, the trial court instructed the jury that opening statements and closing arguments were not evidence. T. at 413, 433, 444. We find the manner in which the trial court handled the issue, coupled with defense counsel's closing statement on the issue, did not equate to any under prejudice to appellant or have an affect on the outcome of the case.
 {¶ 24} Upon review, we find no prosecutorial misconduct.
 {¶ 25} Assignment of Error I is denied.
 II {¶ 26} Appellant claims he was denied effective assistance of trial counsel. We disagree. *Page 7 
 {¶ 27} The standard this issue must be measured against is set out inState v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Appellant must establish the following:
 {¶ 28} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976],48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v.Washington [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 {¶ 29} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
 {¶ 30} Appellant argues his trial counsel was deficient in failing to object to the instances of prosecutorial misconduct. As we discussed in Assignment of Error I, we find the complained of instances did not equate to prosecutorial misconduct. In one instance, the voluntariness of T.D.'s testimony, defense counsel objected and pursued the issue for the record and mentioned it during closing argument. T. at 409, 418.
 {¶ 31} Appellant also argues his trial counsel failed to object to multiple hearsay statements made by T.D. During the course of T.D.'s testimony, she stated the following:
 {¶ 32} "* * * I told C*** what happened and — I broke down and told her what happened, and when I was telling her about what happened, she's like, oh, my god, T***, he did the same to me while we were playing chicken." T. at 266. *Page 8 
 {¶ 33} Defense counsel objected, and the trial court sustained the "last part," instructing the jury to "disregard it." T. at 266-267. The trial court's decision does not demonstrate any deficiency by trial counsel. In addition, earlier in her testimony, T.D. testified her friend questioned her about her change of mood while in appellant's presence, and appellant non-verbally indicated to her to be quiet. T. at 266.
 {¶ 34} Appellant also argues defense counsel's failure to object to T.D.'s repeated attempts to tell someone about the incident before she ran away from the rehabilitation facility and then report the incident to the police after she was caught was further proof of trial counsel's deficiencies. We find even if an objection had been raised, the testimony would have been admissible without the use of Evid. R. 801(D)(1).
 {¶ 35} As we acknowledged in Assignment of Error I, the theory of the case was that appellant's sexual contact with T.D. caused her to be unruly. T.D. testified she ran away because of appellant's conduct and because she no longer felt safe at the rehabilitation facility. T. at 282, 300. Up to and including the time before the hiking trip with appellant, T.D. had a record of good behavior at the facility. T. at 257-258. When she was caught by the police after running away, she again explained her reason for running.
 {¶ 36} We find these statements were not hearsay because they were not offered as truth of the matter asserted, but to explain T.D.'s mind set and reasons for being unruly. Evid. R. 801(C).
 {¶ 37} Appellant argues despite the trial court's ruling on the issue of what T.D.'s friend told her about appellant's conduct while they were playing "chicken," defense *Page 9 
counsel should have moved for a mistrial. We find the trial court properly ruled on the objection and therefore a mistrial would not have been granted.
 {¶ 38} Lastly, appellant argues his trial counsel did not effectively cross-examine T.D. about whether she was grabbed or the grabbing was only an attempt. On direct examination, T.D. had explicitly explained the incident at least two times. T. at 265, 277. Each time, the incident was discussed in great depth, and the testimony became more explicit. Defense counsel attempted to discredit T.D., asking her how the incident could have happened in deep water. T. at 298-300, 310. Defense counsel also attempted to discredit her reasons for leaving the rehabilitation facility. T. at 304, 307.
 {¶ 39} This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." State v. Post (1987), 32 Ohio St.3d 380, 388.
 {¶ 40} Clearly, the trial strategy was to pick apart T.D.'s reasons for running away. Further because T.D.'s description of appellant's conduct became more explicit each time she was questioned, it could have been a specific trial tactic to leave well enough alone for fear of re-emphasizing the conduct.
 {¶ 41} Upon review, we do not find any deficiency in defense counsel's performance.
 {¶ 42} Assignment of Error II is denied. *Page 10 
 {¶ 43} The judgment of the Court of Common Pleas of Ashland County, Ohio, Juvenile Division is hereby affirmed.
 Farmer, P.J., Hoffman, J., and Delaney, J., concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Ashland County, Ohio, Juvenile Division is affirmed. *Page 1