OPINION
On December 30, 1996, the Perry County Grand Jury indicted appellant, Frederick Erwin, II, a juvenile, on one count of aggravated burglary in violation of R.C. 2911.11(A)(2), two counts of aggravated robbery in violation of R.C. 2911.01(A)(1) and two counts of kidnapping in violation of R.C. 2905.01(A)(2). All counts carried firearm specifications pursuant to R.C. 2941.141.
A jury trial commenced on September 16, 1997. The jury found appellant guilty of all charges except for the five firearm specifications. By judgment entry filed Octboer 29, 1997 and amended judgment entry filed November 12, 1997, the trial court sentenced appellant to a total term of twenty-one years in prison.
Appellant filed a notice of appeal and this matter is now before this court for consideration. Assignment of error is as follows:
I
 TRIAL COUNSEL'S PERFORMANCE IN ALLOWING THE JURY TO CONSIDER APPELLANT'S INADMISSIBLE JUVENILE ADJUDICATIONS AND CRIMINAL CONDUCT CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL, THEREBY DEPRIVING APPELLANT OF HIS RIGHTS AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
 I
Appellant claims his trial counsel was ineffective for failing to object to evidence of his prior juvenile adjudications and criminal conduct. We disagree.
The standard this case must be measured against is set out inState v. Bradley (1989), 42 Ohio St.3d 136, 142, certiorari denied110 S.Ct. 3258. Appellant must establish two criteria:
 1) [C]ounsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition.
2) [P]rejudice arises from counsel's performance.
In order to warrant reversal, appellant must establish ". . . but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland v. Washington
(1984), 466 U.S. 668, 696. This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight."State v. Post (1987), 32 Ohio St.3d 380, 388.
Defense counsel brought up appellant's prior juvenile adjudications when he cross-examined one of appellant's accomplices, Anthony Eads:
Q. You served some time with Fred in TICO?
A. Yes.
Q. Got out in January of `96?
A. Yes.
Q. And he went to Zanesville at that time?
A. Fred?
Q. Yes.
A. Yes.
Q. You stayed in Thornville?
A. Yes.
Q. You didn't have any contact with him?
 A. Yes, we — small contacts here and there. You know, we didn't call each other every day.
 Q. You didn't call each other every day. How many times did you call him in February of 1996?
 A. I wouldn't have a clue. Maybe you can get my phone record, I don't know.
T. at 119.
On redirect, the prosecutor pursued the issue as follows:
 Q. Okay. Now, Mr. Schnittke asked you about spending time at TICO with the Defendant. Did you?
A. Yes.
Q. And why were the two of you at TICO?
A. For theft of tires. We stole these two tires.
 Q. Okay. And was there another offense that you did together?
A. Yes.
Q. What was that?
 Q. Aggravated burglary and we stole a car when we were like 14.
Q. The two of you together?
A. Yes.
T. at 127-128.
On direct, appellant acknowledged his past criminal offenses as follows:
 Q. You have to keep you voice up. Where did you attend school in — January to May of 1996?
A. January to May?
Q. 1996.
A. Zanesville High School.
Q. Where had you attend prior to that?
A. Before that?
Q. Yes.
A. I was locked up before that.
Q. Where at?
A. TICO.
Q. How long had you been locked up in TICO?
A. I did six months there.
Q. For what?
 A. For — I don't know if it was receiving stolen property or what they — or what it was. I am not for sure. We was up in Thornville, we received tires.
Q. Who was we?
A. Me and Anthony Eads.
* * *
Q. Do you know Anthony Eads?
A. Yes, I do.
Q. How do you know him?
 A. I went to school with him. I was real good friends with him before.
 Q. Did you get in trouble other than the one time you had mentioned?
A. Yes, I have.
Q. What was that for?
A. High speed chase in a stolen car.
 Q. Did you get in trouble with him in a burglary charge?
A. Yes, it was all on the same thing.
Q. How old were you then?
A. I was 13.
Q. And what happened to you at that time?
 A. I got sent away for a year. I did eight months of a whole year in Circleville Youth Center.
T. at 257-258 and 260-261, respectively.
Appellant testified to having reformed his life from his past behavior and to having distanced himself from his old associates and Perry County:
 Q. Any reason why you went to live in Zanesville with them?
 A. So I can get out of Perry County and go down there and meet new people, fresh start, do better in school and everything, having a life instead of being up here being with — I don't know what you want to call them. I mean —
T. at 259.
On cross-examination, appellant admitted to having been incarcerated with Mr. Eads as follows:
 Q. Now, you, on direct, testified about being in Circleville Youth Center?
A. Yes, I have.
Q. When was that?
A. `93 and `94.
 Q. Okay. You were there because of aggravated burglary?
A. Yes, I was.
 Q. And that was an aggravated burglary that you were involved in with Anthony Eads?
A. Do what?
 Q. Is that because you and Anthony Eads got together and did that?
A. Yes, me and Anthony did that.
 Q. Okay. And after you had done that, you served your time, you got out, and then you indicated you went to TICO. What's TICO?
 A. Yeah. It's a youth center. It's in Columbus, Ohio.
Q. It's like a prison for kids?
A. Yeah, juvenile detention home.
Q. And why did you go there?
A. For receiving stolen property.
* * *
 Q. So, if I understand it, you have got two prior aggravated burglaries on your record?
A. Yes, as a juvenile.
Q. An aggravated felony as a juvenile?
A. All as a juvenile.
T. at 273-274.
Defense counsel's entire strategy was to show appellant did not commit the crimes, appellant had totally distanced himself from his prior associates and appellant had amended his life. These points were presented to the jury via opening statement and closing argument, respectively:
 We intend to produce evidence that he wasn't there when the crime was committed. My client did not do this crime. * * * You ask yourselves, then, `Well, why is Fred Erwin brought into this?' And Fred will get up on the stand and tell you he had former involvement with Anthony Eads as a juvenile. He served some time in TICO. He will tell you that when he testifies here today. After he got out of TICO in January of `96, he left Perry County to get away from this involvement with these people; moved in with his grandmother in Zanesville. In Zanesville, he went to Zanesville High School, got a girlfriend, got a job at Pick `n Save in Zanesville.
T. at 80.
 He spent Friday night at home, was with his grandmother, his girlfriend, his two cousins. He wasn't out terrorizing or robbing, he was home in bed getting ready to work the next day like any of us do when we have to work the next day. I think the alibi has been established in this case. Anthony is an old running mate of Fred. I heard Fred testify that he moved to Muskingum to get away from this influence. you heard him testify he didn't have any more contact with him, tried to get away from these people. That's why he was in Zanesville. He didn't want any more trouble, he wanted to get his life in order. He wasn't looking to go back into the criminal justice system.
T. at 296.
Appellant now argues despite this obvious trial strategy, the decision to introduce evidence of appellant's prior juvenile adjudications and criminal conduct was "ill-advised" and in violation of Evid.R. 609(D) which states as follows:
 Evid R 609. IMPEACHMENT BY EVIDENCE OF CONVICTION OF CRIME
 (D) Juvenile adjudications
 Evidence of juvenile adjudications is not admissible except as provided by statute enacted by the General Assembly.
Appellant is correct in arguing the state could not have cross-examined him on his prior juvenile adjudications nor reveal testimony as a result of prior juvenile proceedings. However, in the case sub judice, this court is faced with the issue in reverse. The state did nothing to elicit the complained of evidence. Defense counsel used the evidence as a tool to prove appellant had chosen the high ground and had disassociated himself from Mr. Eads, accomplice and previous co-conspirator in crime. We must decide whether this concerted defense was in fact done out of defense counsel's ignorance of the law or was done to establish appellant's innocence.
The trial court instructed the jury on evidence of prior criminal acts as follows:
 Testimony was introduced tending to prove that the Defendant was convicted of prior criminal acts. This testimony may be considered for the purpose of helping you test the credibility or weight to be given to this testimony. It cannot be considered for any other purpose.
T. at 313.
A review of the record does not demonstrate defense counsel was ignorant of the law. A properly licensed attorney practicing in this state is presumed to be competent. State v. Lytle (1976),48 Ohio St.2d 391.
The record demonstrates appellant's defense was to prove his accomplices were untruthful; to prove his accomplices singled him out to shift the blame away from themselves; to prove he was someplace else during the commission of the crimes via his own testimony and that of his alibi witnesses; and lastly, to prove he was forthright to the jury in admitting his past mistakes and that he had reformed.
Based upon the tenure of the trial and defense, we conclude defense counsel's tactic was a conscious decision involving strategy and therefore is not a reflection of ineffective assistance of counsel. Further, we find the introduction of appellant's prior juvenile adjudications and criminal conduct did not unduly prejudice appellant. The jury appears to have found all four of appellant's alibi witnesses not to be credible. Any error in the admission of appellant's prior juvenile adjudications and criminal conduct did not deprive appellant of a fair trial.
The sole assignment of error is denied.
The judgment of the Court of Common Pleas of Perry County, Ohio is hereby affirmed.
By Farmer, P.J., Gwin, J. and Reader, J. concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Perry County, Ohio is affirmed.