[Cite as *State v. Chirco*, 2023-Ohio-22.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. Nos. 29399; 29400 |
| | : | |
| v. | : | Trial Court Case Nos. 2021 CR 02927; |
| | : | 2021 CR 03506 |
| PAUL CHIRCO | : | |
| | : | (Criminal Appeal from Common Pleas |
| Appellant | : | Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 6, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by RICKY L. MURRAY, Attorney for Appellee

JEFFREY T. GRAMZA, Attorney for Appellant

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Paul Chirco appeals from his convictions for inducing panic, making false alarms, and retaliation. Chirco contends that his conviction for retaliation should be reversed, because he was prejudiced when the trial court improperly allowed a witness to testify regarding Chirco's state of mind when he left voicemails threatening a municipal court judge. For the following reasons, we affirm the judgments of the trial court.

I.    Facts and Course of Proceedings

{¶ 2} In November 2019, Chirco was admitted to the mental health docket of the Dayton Municipal Court. In March 2021, a bench warrant was issued against Chirco due to his failure to stay in contact with his probation officer and case manager. Chirco was arrested, his bond was revoked, and he spent 22 days in jail. In August 2021, Chirco was investigated for making bomb threats relating to the Regional Transit Authority (RTA) bus hub in downtown Dayton and for leaving threatening and racially-charged voicemails for Dayton Municipal Court Judge Carl Henderson.

{¶ 3} On September 7, 2021, in Montgomery County C.P No. 2021-CR-2927, a Montgomery County grand jury indicted Chirco on one count of inducing panic and one count of making false alarms. On November 12, 2021, in Montgomery County C.P. No. 2021-CR-3506, a Montgomery County grand jury indicted Chirco on one count of retaliation, a third-degree felony in violation of R.C. 2921.05(A). The two cases were tried together in a bench trial on January 31, 2022.

{¶ 4} During the bench trial, the State presented four witnesses. Dayton

Municipal Court Judge Carl Henderson testified first for the State. Judge Henderson is the presiding judge of the mental health court docket. As part of his duties, he has at least monthly contact with each participant in the docket. *Id.* at 9, 11-12. Chirco was a participant in the mental health docket due to past convictions for making false alarms and domestic violence. *Id.* at 15. Judge Henderson described Chirco's participation in the program as starting off "a little rocky," then "pretty good," and then "he just fell off the rails." *Id.* at 16. In March 2021, a bench warrant was issued due to Chirco's failure to stay in communication with his case manager and probation officer. *Id.* at 17. Chirco's probation was revoked, and he spent 22 days in jail. *Id.* at 19.

{¶ 5} Chirco called Judge Henderson's office number and left several voicemail messages between April 2 and August 7, 2021. Chirco left the first voicemail message a few days before he was arrested on the bench warrant and left the second one on May 29, 2021, after he was released from jail. *Id.* at 22-28. Judge Henderson testified that it sounded like Chirco on the voicemails. When asked why he believed Chirco left the voicemails, Judge Henderson testified, "He was upset that he went to jail." *Id.* at 28-29.

{¶ 6} Andrea Burns testified that she had worked as a probation officer for 14 years, including two years with the mental health docket. *Id.* at 32-33. Chirco was assigned to her, and she spoke with him many times by phone. She characterized his voice as distinct and was able to confirm it was his voice in the voicemails that were left for Judge Henderson. *Id.* at 37-38, 42-45.

{¶ 7} Police Officer Richard Thimmes also testified that, at around 7:00 p.m. on August 28, 2021, he was part of a 2-man police crew dispatched to investigate a bomb

threat at the RTA bus hub on South Main Street. *Id.* at 50-51. After helping to shut down two streets and evacuate people from the area, Officer Thimmes went to Chirco's residence, because Chirco's phone number had been identified as the number that called in the bomb threat. While Officer Thimmes was questioning Chirco, the dispatch called the phone number from which the bomb threat originated and Chirco's phone rang in response to dispatch's call. *Id.* at 56-59.

{¶ 8} Detective Bradley Meeker, who had worked for over four years on the joint terrorism task force with the Dayton Police Department, was assigned to investigate the threats made in voicemails left for Judge Henderson. *Id.* at 61. Based on a review of the contents of Chirco's cell phone, along with the call logs obtained from Chirco's cellular provider, Detective Meeker determined that all the voicemails to Judge Henderson lined up with calls placed from Chirco's cell phone. *Id.* at 79-92, 96.

{¶ 9} At the conclusion of the bench trial, the trial court found Chirco guilty on all three counts. The trial court sentenced Chirco to one year in prison for inducing panic, one year in prison for making false alarms, and two years in prison for retaliation. All of the sentences were made concurrent, resulting in a total prison term of two years. Chirco filed a timely notice of appeal.

II.    Chirco Failed to Establish Plain Error or Prejudice in The Trial Court's Decision to Allow Judge Henderson to Testify as to Why He Believed Chirco Threatened Him

{¶ 10} Chirco's sole assignment of error states:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT OVERRULED APPELLANT'S OBJECTION TO TESTIMONY THAT WAS BASED ON SPECULATION AND NOT FROM THE PERSONAL KNOWLEDGE OF THE WITNESS.

{¶ 11} Although he was convicted of three offenses, Chirco only challenges his conviction for retaliation under R.C. 2921.05(A).   That statute provides:

> (A) No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness.

{¶ 12} Chirco's retaliation charge resulted from a series of voicemails he left on Judge Henderson's office number.   During several of these short messages, Chirco identified himself as Adolf Hitler, James Earl Ray, or Rudolf Hess and then yelled "Die!" Chirco also left a voicemail that said "I'm out now. You piece of sh**. Watch your back." The final voicemail, which was left on August 7, 2021, stated "I'm gonna kill you, motherf***er."

{¶ 13} In his assignment of error, Chirco contends that the trial court improperly relied on inadmissible testimony.   According to Chirco, the trial court should not have admitted the testimony of Judge Henderson regarding Chirco's intent in leaving the voicemails.   The challenged testimony is as follows:

Q:      And upon hearing these voicemails, did you know who the caller was at the time?

A:      It sounded like Mr. Chirco.

Q:      Okay.  And did you inform the police of that at the time when you first notified them?

A:      Yes.

Q:      Okay.  And did you have any knowledge of why he was leaving these voicemails to you?

MR. BRENNER:      Objection, Your Honor.   Speculation.

THE COURT:      I'm going to overrule that.   I can – I believe the question do you have any idea, he can answer that yes or no.

A:      Yes.

BY MR. MCPHERRON:

Q:      And why do you believe he was leaving these voicemails?

A:      He was upset that he went to jail.

Trial Transcript, p. 28-29.

{¶ 14} Chirco contends that the statement "He was upset that he went to jail" violated Evid.R. 602's requirement that a witness must testify only to matters of which the witness has personal knowledge.   The State counters that "Judge Henderson had substantial firsthand knowledge to allow him to perceive Chirco's level of frustration and anger with Judge Henderson."   State's Appellate Brief, p. 6.

{¶ 15} Chirco contends that his attorney objected to the testimony at trial.   But a

close look at the testimony reveals that while defense counsel objected to the initial question involving whether Judge Henderson knew why Chirco had left the voicemails, he failed to object to the follow-up question asked by counsel for the State that led to the testimony cited by Chirco in this appeal. Therefore, Chirco has waived all but plain error. *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus.

{¶ 16} An alleged error is plain error only if the error is "obvious," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), and "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus. The overwhelming evidence at trial, including the testimony of the police officers and the voicemails left by Chirco, established all the required elements of the retaliation offense. Judge Henderson's testimony did not go beyond what a rational trier of fact would infer from the voicemails left by Chirco. Especially damning was the voicemail left by Chirco when he was released from jail, in which he stated "I'm out now. You piece of sh**. Watch your back."

{¶ 17} Further, we are in no way convinced that the trial court even considered Judge Henderson's one line of testimony regarding Chirco's mental state when finding Chirco guilty of retaliation. Rather, the trial court stated: "I think that the mental states of the Defendant Paul Chirco are established by the -- by inference drawn from the direct evidence in this case." Trial Transcript, p. 101. Contrary to Chirco's assertions, the trial

court did not mention Judge Henderson's testimony regarding why he believed Chirco left the voicemails. "[I]n reviewing a bench trial, an appellate court presumes that a trial court considered nothing but relevant and competent evidence in reaching its verdict. The presumption may be overcome only by an affirmative showing to the contrary by the appellant." *State v. Wiles*, 59 Ohio St.3d 71, 86, 571 N.E.2d 97 (1991), citing *State v. Post*, 32 Ohio St.3d 380, 384, 513 N.E.2d 754 (1987).

**{¶ 18}** The evidence that the voicemails originated from Chirco's phone number, along with the identification of Chirco's voice on the voicemails, the timing of the voicemails, the content of the voicemails, and the fact that Judge Henderson issued the order that resulted in Chirco's going to jail was more than sufficient to establish the elements of retaliation beyond a reasonable doubt.

**{¶ 19}** Chirco has failed to establish plain error or prejudice from the admission of Judge Henderson's one line of testimony as to why he believed Chirco left the voicemails. The sole assignment of error is overruled.

III.     Conclusion

**{¶ 20}** Having overruled the sole assignment of error, the judgments of the trial court are affirmed.

. . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.